Karen L. Dunn (DC SBN 1002520; *pro hac vice*)
William A. Isaacson (DC SBN 414788; *pro hac vice*)
Jessica E. Phillips (DC SBN 991072; *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com
wisaacson@paulweiss.com
jphillips@paulweiss.com

Yahonnes S. Cleary (NY SBN 4802492; *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
ycleary@paulweiss.com

Meredith R. Dearborn (SBN 268312)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
943 Steiner St.
San Francisco, CA 94117
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
mdearborn@paulweiss.com

*Counsel for Defendant*
Apple Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SAURIKIT, LLC<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant. | CASE NO. 4:20-cv-08733-YGR<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 4, 2021<br>Time: 2:00 PM<br>Place: Courtroom 1, 4th Floor<br><br>The Honorable Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

NOTICE OF MOTION AND MOTION ...................................................................................... 1

RELIEF SOUGHT ...................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

PRELIMINARY STATEMENT ................................................................................................. 1

PLAINTIFF'S ALLEGATIONS ................................................................................................. 3

I.      APPLE ........................................................................................................................... 3

II.     CYDIA .......................................................................................................................... 5

III.    THE LAWSUIT ............................................................................................................. 5

ARGUMENT .............................................................................................................................. 6

I.      LEGAL STANDARD .................................................................................................... 6

II.     PLAINTIFF'S ANTITRUST CLAIMS ARE TIME-BARRED. ..................................... 6

        A.      Plaintiff's Antitrust Claims for Damages Accrued Outside of the Statute of
                Limitations Period. ............................................................................................ 7

        B.      The Continuing Violation Exception Does Not Save Plaintiff's Damages
                Claims. ............................................................................................................... 8

                1.      The Sale of New iPhones or the Updates of Existing iPhones Do Not
                        Restart the Statute of Limitations .......................................................... 8

                2.      Apple's Updated Contractual Policies Do Not Restart the Statute of
                        Limitations. .......................................................................................... 10

                3.      Apple's Alleged Technical Restrictions Do Not Restart the Limitations
                        Period. .................................................................................................. 13

        C.      Plaintiff's Antitrust Claims for Injunctive Relief Must Also Be Dismissed......... 14

III.    PLAINTIFF'S UCL CLAIM IS ALSO BARRED BY A FOUR-YEAR STATUTE
        OF LIMITATIONS ...................................................................................................... 15

CONCLUSION ........................................................................................................................ 16

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

i

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**CASES**

4

*In re Animation Workers Antitrust Litigation*,
  87 F. Supp. 3d 1195 (N.D. Cal. 2015) ............................................................. 10, 15

5

*In re Apple iPod iTunes Antitrust Litig.*,
6   No. C 05-00037 JW, 2009 WL 10678940 (N.D. Cal. Oct. 30, 2009) ....................................... 7

7

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 6

8

*Aurora Enters.* v. *Nat'l Broad. Co.*,
9   688 F.2d 689 (9th Cir. 1982) ........................................................................ 9, 14

10

*Danjaq LLC* v. *Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) ......................................................................... 14

11

*Garrison* v. *Oracle Corporation*,
12   159 F. Supp. 3d 1044 (N.D. Cal. 2016) ............................................................ 6, 10

13

*Hot Wax, Inc.* v. *Turtle Wax, Inc.*,
  191 F.3d 813 (7th Cir. 1999) .......................................................................... 15

14

*Int'l Tel. & Tel. Corp.* v. *Gen. Tel. & Elecs. Corp.*,
15   518 F.2d 913 (9th Cir. 1975) ....................................................................... 14, 15

16

*Jablon* v. *Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ........................................................................... 6

17

*Jarrow Formulas, Inc.* v. *Nutrition Now, Inc.*,
18   304 F.3d 829 (9th Cir. 2002) .......................................................................... 15

19

*MedioStream, Inc.* v. *Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................................... 9

20

*Midwestern Mach. Co.* v. *Nw. Airlines, Inc.*,
21   392 F.3d 265 (8th Cir. 2004) ........................................................................... 8

22

*In re Multidistrict Vehicle Air Pollution*,
  591 F.2d 68 (9th Cir. 1979) ................................................................. 11, 12, 13

23

*Oliver* v. *SD-3C LLC*,
24   751 F.3d 1081 (9th Cir. 2014) ...................................................................... 8, 14

25

*Pace Indus., Inc.* v. *Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) ................................................................ 6, 8, 9, 12

26

*Reveal Chat Holdco, LLC* v. *Facebook, Inc.*,
27   471 F. Supp. 3d 981 (N.D. Cal. 2020) ............................................................... 14

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

ii

*Sprewell* v. *Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001).................................................................... 6

*Stanislaus Food Prods. Co.* v. *USS-POSCO Indus.*,
    No. CV F 09-0560LJO SMS, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) .......... 9, 11, 12, 14

**STATUTES**

15 U.S.C. § 15b .......................................................................................... 6

Sherman Act.......................................................................................... 3, 5, 6, 15

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq............................ 3, 15

**OTHER AUTHORITIES**

App Store Review Guidelines, Apple (Sept. 11, 2020), https://developer.apple.com
    /app-store/review/guidelines/ (last visited Feb. 4, 2021) ............................ 4

*The App Store Turns 10*, Apple (July 5, 2018), www.tinyurl.com/App-Store-
    Turns-10 (last accessed Feb. 4, 2021)........................................................ 2, 7, 14

**RULES**

Fed. R. Civ. P. 12(b)(6).............................................................................. 1, 6

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 4, 2021, at 2:00 P.M., or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, Oakland Federal District Courthouse, Courtroom 1, 4th Floor, at 1301 Clay Street, Oakland, CA 94612, before the Hon. Yvonne Gonzalez Rogers, Defendant Apple Inc. ("Apple") will and hereby does move the Court to dismiss Plaintiff SaurikIT, LLC's Complaint (*SaurikIT, LLC* v. *Apple Inc.*, No. 4:20-cv-08733-YGR, (Dkt. No. 1)) for failure to state a claim upon which relief can be granted.  This Motion is supported by this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the accompanying Request to Incorporate by Reference; the accompanying Phillips Declaration and Exhibits A and B thereto; the [Proposed] Order filed herewith; the pleadings and papers on file herein; and such other matters that may be presented to the Court at the hearing.

**RELIEF SOUGHT**

Apple seeks an order dismissing Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUE TO BE DECIDED**

Should all of Plaintiff's claims be dismissed because they are barred by the applicable four-year statutes of limitations or the equitable doctrine of laches?

**PRELIMINARY STATEMENT**

Apple set out to build the most secure, private, and trusted mobile computing device ever created when it launched the iPhone over thirteen years ago.  The iPhone has proven remarkably resilient to computer viruses, malware, and privacy attacks.  This reflects significant effort by Apple, which constantly works to protect iOS devices (and users) against external attacks and security breaches, thereby ensuring the high-quality and reliable user experience that has become the hallmark of Apple's brand today.

To these ends, Apple made the decision in 2008 that iOS users would be able to download native applications only through the App Store.  *See* Complaint, ECF No. 1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

1

("Compl.") ¶ 26.  Since then, Apple has preinstalled the App Store on every iOS device and has extensively reviewed and vetted all apps submitted by developers for distribution through the App Store.  *Id*.  And since 2009, Apple has required developers to use the App Store's integrated IAP functionality for purchases of paid apps and in-app digital goods and services.  *Id.* ¶ 69; *The App Store Turns 10*, Apple (July 5, 2018), www.tinyurl.com/App-Store-Turns-10 (last accessed Feb. 4, 2021) (cited in Compl. ¶¶ 24 n.13, 32 n.26).  In setting and enforcing these and other app distribution policies and guidelines, Apple decided to exercise a greater degree of control over the iOS ecosystem to best ensure quality of experience, security, and privacy for users of iOS devices.  *See id.* ¶¶ 18, 47, 50.

Apple has never allowed third parties to distribute native iOS applications for the iPhone through alternative app stores.  Of course, there have always been those who seek to hack or "jailbreak" the iPhone.  Jay Freeman, the engineer who founded Plaintiff SaurikIT, LLC, sought commercial gain by jailbreaking or making unauthorized modifications, or "hacks," to early iPhones over a decade ago.  Plaintiff developed Cydia—the Latin name for a moth larva, or the proverbial "worm in the apple"—which is an interface designed to distribute unauthorized modifications for iOS and third-party apps.  *See id.* ¶ 23.  Cydia can only be downloaded onto iOS devices that have been "jailbroken" by modifying the operating system in an unauthorized manner.  *See id.* ¶ 26.  Jailbreaking and other forms of hacking posed a significant threat to the promise of security, privacy, and trust that consumers associate with the Apple brand.  Indeed, a jailbroken device eliminates many, if not most, of the security protections that Apple has made a hallmark of its devices and exposes users to hostile exploits of all kinds.

Fast forward over a decade later.  On December 10, 2020, in an effort to piggyback on and benefit from prior-filed cases, Plaintiff commenced this action accusing Apple of maintaining a monopoly by (among other things) precluding competing "app stores" such as Cydia.  But Cydia has always worked only on "jailbroken" iPhones precisely because Cydia has *never* been authorized by Apple to distribute native third-party applications on iOS devices.  *See id.*  The Complaint thus challenges business decisions that were made by Apple—and directly affected Plaintiff—more than a decade ago, shortly after the iPhone itself was introduced.  *See,*

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

2

1  *e.g.*, *id.*  Plaintiff now seeks damages and an injunction from this Court prohibiting Apple from

2  implementing both contractual and technical restrictions on App Store alternatives such as Cydia

3  is alleged to be.  *Id.* p. 37.

4        The Complaint should be dismissed because all of Plaintiff's claims are untimely.

5  Federal antitrust claims and claims brought under California's Unfair Competition Law are

6  subject to four-year statutes of limitations, which accrue when a defendant commits an act that

7  injures a plaintiff.  Apple required developers to submit apps for distribution to iOS consumers

8  through the App Store in 2008, and required the use of IAP for paid apps and digital content in

9  2009.  *See id.* ¶¶ 24, 26.  Plaintiff's claims thus accrued no later than 2009 and the limitations

10  period therefore ran in 2013—***seven years*** before Plaintiff filed suit.  Plaintiff's claim for

11  equitable relief under the Sherman Act, which is subject to the equitable doctrine of laches, fails

12  for the same reason.  Moreover, the continuing violation exception cannot save Plaintiff's claims

13  because the Complaint does not properly allege any overt act taken by Apple that occurred after

14  the limitations period ran in 2013.

15  **PLAINTIFF'S ALLEGATIONS**

16  **I.**    **APPLE**

17        When first introduced in 2007, the iPhone was limited to a suite of integrated Apple apps

18  that came preinstalled on the device.  *Id.* ¶ 16.[1]  At that time, there was no "initial marketplace"

19  for apps, in part due to the "almost total lack of programming interface support from Apple."  *Id.*

20  ¶ 22.  That all began to change in October 2007, when Apple announced that it would be

21  releasing a Software Development Kit designed to allow developers to safely and securely build

22  apps for iOS devices.  As part of its development of the App Store, Apple released its Software

23  Development Kit in February 2008.  In July 2008, Apple launched the App Store, "the

24  distribution channel through which [iOS] users locate, download, and pay for applications [] for

25  their phone."  *Id.* ¶¶ 1, 24.

26        The App Store revolutionized the business of developing, marketing, shopping for, and

27

28

---

[1] Allegations in Plaintiff's complaint are stated herein solely for purposes of this motion to dismiss.  Apple does not admit the truth of any of Plaintiff's allegations.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

3

acquiring apps.  Prior to Apple's introduction of the App Store, software was generally bought and sold through brick and mortar stores.  *See id.* ¶ 19.  The creation of the App Store empowered developers, reducing costs and increasing output, and making it much easier for developers to reach iOS users around the world and seamlessly deliver apps to those customers.  The App Store provided both consumers and developers with a high-quality, safe, secure, and reliable experience, illustrated by the fact that there are more than two million apps available on the App Store today, which have been downloaded more than 25 *billion* times.  *Id.* ¶ 32.

The "guiding principle" of the App Store is simple:  Apple desires to provide a "safe experience for users to get apps and a great opportunity for all developers to be successful."  App Store Review Guidelines, Apple (Sept. 11, 2020), https://developer.apple.com/app-store/review/guidelines/ (last visited Feb. 4, 2021) (cited in Compl. ¶ 26 n.17).  From their inception, the App Store and its integrated IAP functionality have connected app developers and consumers in secure and private transactions.  By contrast, iOS devices that have been "jailbroken"—a process that modifies Apple's iOS operating system to enable the installation of unauthorized software, including applications from *other* interfaces—pose serious security and privacy concerns and open users and their devices up to vulnerabilities.  *See* Compl. ¶ 26.

Apple takes several measures to ensure that iOS users enjoy a secure and reliable experience on their iOS devices and are not opened up to vulnerabilities.  The App Store comes preinstalled on iOS devices like the iPhone and iPad.  *Id.* ¶¶ 5, 26, 37.  iOS users who "do not want to void their warranty can *only* download iOS apps through the App Store."  *Id.* ¶ 26 (emphasis in original).  And app developers who want to submit apps for distribution on the App Store must enter into two agreements with Apple:  the Apple Developer Agreement and the Apple Developer Program License Agreement.  *Id.* ¶¶ 5, 28.  Those agreements require that apps must be approved by Apple, after an extensive vetting process, for distribution via the App Store.  *Id.* ¶¶ 28, 29.

In 2009, Apple introduced IAP.  *See id.* ¶ 52.  IAP is an in-app purchase functionality to the App Store that allows iOS users to purchase paid apps, and digital goods and services within apps, without the inconvenience and security risks of registering their payment information with

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

4

CRITICAL

each developer.  IAP is also the mechanism by which Apple records sales and collects Apple's commissions on such sales, which fund Apple's investment in the App Store as well as the tools, intellectual property, and services that Apple provides to assist developers in creating cutting-edge apps.  Each app submitted to Apple for distribution via the App Store is further reviewed by Apple to ensure that the consumer gets what it pays for through IAP.  Through the Developer Agreements, developers agree that their apps will use IAP for all in-app purchases of digital goods and services.  *See id.* ¶¶ 24 n.13, 52.  Nothing about this policy has changed since 2009.

## II.    CYDIA

Cydia is an interface developed by Jay Freeman in 2008 that distributes applications, packages, and tweaks that "expand the iPhone's stock capabilities," including by changing the interface of the device itself and altering its functionality.  *Id.* ¶¶ 3, 9, 21.  Freeman first made Cydia available in March 2008—a mere four months before Apple introduced the App Store in July 2008, *id.* ¶ 24, but six months *after* Apple had first announced that it was working on a Software Development Kit that would be available to developers by February 2008.  Apple has *never* authorized Cydia to distribute native applications on iOS devices.  When Apple introduced the App Store on the iPhone to provide consumers and developers with a high-quality, safe, secure, and reliable experience, Apple put in place technological precautions to prevent native app distribution on iOS devices through any app store other than the App Store.  *Id.* ¶ 5.  From July 2008, Cydia has only been capable of operating on jailbroken iOS devices.  *See id.*

## III.   THE LAWSUIT

On December 10, 2020, Plaintiff filed suit.  Plaintiff asserts, among other claims, violations of Sections 1 and 2 of the Sherman Act.  Plaintiff claims that Apple possesses monopoly power over the market for "iOS app distribution (*i.e.* distribution for apps written for iOS devices)" and the market for "iOS app payment processing (*i.e.* payment processing for apps written for iOS devices, as well as in-app purchases for such apps)."  *Id.* ¶ 35.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

5

1

## ARGUMENT

2

### I.     LEGAL STANDARD

3

4          To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

5   complaint must contain sufficient factual matter "to 'state a claim to relief that is plausible on its

6   face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550

7   U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

8   that allows the court to draw the reasonable inference that the defendant is liable for the

9   misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The court need not "accept as true

10  allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

11  inferences."  *Sprewell* v. *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A district

12  court may dismiss a claim "[i]f the running of the statute [of limitations] is apparent on the face

13  of the complaint" and "the assertions of the complaint . . . would not permit the plaintiff to prove

14  that the statute was tolled."  *Jablon* v. *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

15  ### II.    PLAINTIFF'S ANTITRUST CLAIMS ARE TIME-BARRED.

16          Federal antitrust claims seeking damages are subject to a four-year statute of limitations.

17  *See* 15 U.S.C. § 15b.  Claims not brought within that period "shall be forever barred."  *Id.*  "A

18  cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and

19  the statute of limitations runs from the commission of the act."  *Pace Indus., Inc.* v. *Three*

20  *Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987); *Garrison* v. *Oracle Corporation*, 159 F. Supp.

21  3d 1044, 1066 (N.D. Cal. 2016) (stating that "this Court is bound by the Ninth Circuit's decision

22  that, absent an exception, a Sherman Act claim accrues at the time of the anticompetitive

23  conduct").

24          Plaintiff filed this lawsuit on December 10, 2020.  Therefore, to be timely, Plaintiff's

25  claims must have accrued on or after December 10, 2016.  But, as Plaintiff's own allegations

26  make clear, those claims accrued well before December 2016 and must be dismissed.

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

6

### A.   Plaintiff's Antitrust Claims for Damages Accrued Outside of the Statute of Limitations Period.

The Complaint is premised on two distinct actions that allegedly damaged Plaintiff: (1) Apple's decision requiring that apps be distributed to iOS users through the App Store, and (2) Apple's decision requiring that IAP be used for paid apps and in-app purchases of digital content.  Compl. ¶¶ 5, 15.  Those actions respectively occurred in 2008 and 2009—over a decade before Plaintiff filed suit.

As to the first action, Plaintiff's own allegations underscore just how untimely its claims are.  Plaintiff alleges that "***ever since*** Apple first introduced the App Store, it has preinstalled the App Store app on iPhones and made it so that users can neither remove the app nor change their default preference to any other marketplace, such as Cydia." *Id.* ¶ 26 (emphasis added).  Plaintiff concedes that the App Store opened in July 2008. *Id.* ¶ 37.  Plaintiff likewise concedes that Apple's decision to "preinstall[] the App Store app as the sole marketplace and distributor for iOS apps" and the "drastic steps" it took to ensure that it controlled every aspect of iOS app distribution was a decision that was made "early on." *Id.* ¶ 40.

The same is true of Apple's decision to require iOS app developers to use IAP for sales of digital content.  That decision was made "early on." *Id.* ¶ 52.  The materials on which Plaintiff relies confirm that Apple introduced IAP in 2009. *See The App Store Turns 10*, Apple (July 5, 2018), www.tinyurl.com/App-Store-Turns-10 (last accessed Feb. 4, 2021) (cited in Compl. ¶¶ 24 n.13, 32 n.26).  Plaintiff admits that Apple's decision to charge a thirty-percent commission on certain paid apps as well as for in-app purchases "has been in place for ***well over a decade*** . . . ."  Compl. ¶ 26 n.18 (emphasis added).

Accordingly, because Plaintiff's antitrust claims accrued by no later than 2009, the statute of limitations expired four years later in 2013, seven years before Plaintiff filed its Complaint.  Plaintiff's antitrust claims are time-barred.

If Plaintiff's arguments here were accepted, antitrust claims for damages could be brought against an array of technologies whose policies and systems were put in places decades ago.  Antitrust claims against Digital Rights Management for copyright protection of digital media could reemerge. *See In re Apple iPod iTunes Antitrust Litig.*, No. C 05-00037 JW, 2009

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

7

WL 10678940 (N.D. Cal. Oct. 30, 2009).  Closed platforms or software ecosystems in place for many years or over a decade, such as the Amazon Kindle, the Microsoft Xbox, or the Nintendo Entertainment System, could all be subject to damages claims by those who claim they should have been admitted to those platforms to sell their goods or services and who say that they are still being denied admission today.

### B.    The Continuing Violation Exception Does Not Save Plaintiff's Damages Claims.

The "continuing violation" exception cannot save Plaintiff's deficient claims because Plaintiff does not adequately allege overt acts taken by Apple after 2008 and 2009.

"A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured." *Pace Indus., Inc.*, 813 F.2d at 237. Even if a plaintiff alleges a continuing violation, in order to restart the statute of limitations, "an overt act by the defendant is required." *Id.*  In the Ninth Circuit, an overt act restarts the statute of limitations only if it (i) is a "new and independent" act ***that is*** "***not merely a reaffirmation of a previous act***," and (ii) "inflict[s] new and accumulating injury on the plaintiff."  *Oliver* v. *SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) (quoting *Pace Indus. Inc.*, 813 F.2d at 238) (alteration in original).  "In practice, where the plaintiff had actual knowledge of the initial violation and suffered sufficient injury, courts generally do not toll the statute of limitations based on a continuing violation theory."  *Midwestern Mach. Co.* v. *Nw. Airlines, Inc.*, 392 F.3d 265, 272 (8th Cir. 2004) (citing Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law, ¶ 320c1 (2d ed. 2000)).

Here, Plaintiff has not alleged any non-conclusory facts sufficient to support an antitrust action brought more than a decade after Apple's alleged anticompetitive conduct.  Instead, the Complaint relies on a variety of purported actions that are nothing more than reaffirmations and continuing consequences of the original decisions that Apple made in 2008 and 2009.

1.    The Sale of New iPhones or the Updates of Existing iPhones Do Not Restart the Statute of Limitations.

Plaintiff first alleges that Apple has caused it "substantial damages . . . due to Apple's

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

8

1    continued anticompetitive conduct, which occurs with every new sale of every new iPhone, and

2    with every update to the iOS operating system on existing iPhones." Compl. ¶ 15.  But the

3    "[c]ontinual purchasing" of "products is merely an affirmation of defendants' prior conduct and

4    does not inflict a 'new and accumulating' injury on plaintiff." *Stanislaus Food Prods. Co.* v.

5    *USS-POSCO Indus.*, No. CV F 09-0560LJO SMS, 2010 WL 3521979, at *16 (E.D. Cal. Sept. 3,

6    2010) (quoting *Aurora Enters., Inc.* v. *Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982)).  The

7    fact that a defendant "receive[s] a benefit today" as a result of an act taken many years outside

8    the limitations period "is not enough to restart the statute of limitations." *Aurora Enters.*, 688

9    F.2d at 694.  Holding otherwise would "destroy" the statute of limitations "since parties may

10    continue indefinitely to receive some benefit as a result of an illegal act performed in the distant

11    past." *Id.*

12       For the same reasons, the fact that Apple "updates" the iOS operating system of existing

13    iPhones is insufficient to restart the statute of limitations.  Apple's updates of its operating

14    system, including updates that prevent jailbreaking, are examples of technical reaffirmations of

15    its decisions that the App Store be the sole app store for app distribution on iOS devices and that

16    iOS app developers use Apple's IAP for all in-app purchases of digital content.  The updates are

17    in service of and implement Apple's original decision from 2008.  In *MedioStream, Inc.* v.

18    *Microsoft Corp.*, the plaintiff alleged that Microsoft excluded it from the video recorder

19    application market and "harmed competition by offering its media platform 'for free,' either as

20    part of a 'bundle' with newly purchased Windows operating systems or as an automatic 'update'

21    to existing operating system software."  869 F. Supp. 2d 1095, 1107 (N.D. Cal. 2012).  The court

22    dismissed the plaintiff's claim as time-barred, explaining that "it appears from the complaint that

23    such practices have been in place since Windows Media was first introduced" and thus the

24    updates were simply "'reaffirmation[s] of a previous act' insufficient to restart the statute of

25    limitations."  *Id.* (quoting *Pace Indus. Inc.*, 813 F.2d at 237) (alteration in original) The same is

26    true here.

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

9

1

2.     <u>Apple's Updated Contractual Policies Do Not Restart the Statute of Limitations</u>.

2        The Complaint also alleges that Apple has continuously modified its App Store policies

3 and developer agreements.  For example, Plaintiff alleges that "[o]ver the years, Apple has

4 continuously modified its App Store policies to preclude iOS app developers from attempting to

5 distribute their apps through any channel except the App Store," and that "Apple specifically

6 revised its developer program license agreement to prohibit developers from facilitating

7 distribution of apps from any source other than the App Store."  Compl. ¶ 63.[2]  According to

8 Plaintiff, Apple "has selectively and arbitrarily enforced those policies to make it more difficult

9 for Cydia and all other iOS app distributors to compete" and "has taken similar steps with respect

10 to iOS payment processing services."  *Id.*  Those allegations cannot restart the limitations period.

11        *First*, with one exception explained below, Plaintiff's allegations are notably undated and

12 are virtually identical to the types of "undated" and unspecific allegations that courts in this

13 district routinely hold do not restart a limitations period.  In *Garrison* v. *Oracle Corp.*, 159 F.

14 Supp. 3d 1044 (N.D. Cal. 2016), the court found the plaintiffs' antitrust claims to be untimely

15 because the complaint "fail[ed] to reveal any specific conduct by [the defendant] during the

16 limitations period."  *Id.* at 1071.  Noting that it need not accept allegations that are "merely

17 conclusory," the court explained that plaintiffs had failed to plead key "dates" surrounding

18 alleged anti-competitive conduct within the limitations period.  *Id.*  Similarly, in *In re Animation*

19 *Workers Antitrust Litigation*, 87 F. Supp. 3d 1195 (N.D. Cal. 2015), the court found plaintiffs'

20 antitrust claims to be time-barred, noting that there was a "rather conspicuous absence of specific

21 dates for many of Plaintiffs' factual allegations," and finding that "those allegations that do

22 contain specific dates all pre-date" the limitations period.  *Id.* at 1212.  Likewise, Plaintiff's

23 allegations concerning Apple's allegedly "continuous" modifications of its policies rely on a

24 "conspicuous absence of specific dates" relating to the purported modifications and cannot be

25 used to restart the statute of limitations.

26

---

27 [2] Plaintiff also alleges that Apple has "on multiple occasions paused or delayed app approval if app developers do not add more revenue-generating features for Apple, such as in-app

28 purchases."  Compl. ¶ 63.  The alleged conduct by Apple is not only undated, but also does not identify any injury that it caused to SaurikIT and therefore cannot restart the limitations period.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

10

1       The Complaint contains a single concrete and dated allegation related to Apple's policies.

2 Specifically, Plaintiff alleges that Apple revised App Store Review Guideline 4.2.6 in December

3 2017 to require developers to create a new account for each of their applications so that Apple

4 could collect a $99 annual fee for each new account.  Compl. ¶ 74.  According to Plaintiff, had

5 Apple not "illegally monopolized the market for iOS app distribution," Apple would have had to

6 "compete on price for the fee with other competitors, such as Cydia."  *Id.*  But, as the Complaint

7 itself makes clear, the annual fee is merely a *consequence* of Apple's alleged behavior; it is not

8 the anticompetitive conduct itself.  *Id.* (alleging that Apple was able to charge the $99 annual fee

9 "[a]s a result of its anticompetitive conduct").  Both before and after this fee, Apple maintained

10 its decade-old decisions that the App Store be the sole app store for app distribution on iOS

11 devices and that iOS app developers use Apple's IAP for in-app purchases of digital content.

12 The fee, therefore, is a prime example of the type of "unabated inertial consequence[] of some

13 pre-limitations action" that does not restart the limitations period.  *In re Multidistrict Vehicle Air*

14 *Pollution*, 591 F.2d 68, 72 (9th Cir. 1979) (quoting *Poster Exchange, Inc.* v. *Nat'l Screen Serv.*

15 *Corp.*, 517 F.2d 117, 128 (5th Cir. 1975)).

16       *Second*, from what little is alleged about these policies, actions taken with respect to such

17 contractual policies would necessarily flow from Apple's decisions made in 2008 and 2009 that

18 the App Store be the sole app store for app distribution on iOS devices and that iOS app

19 developers use Apple's IAP for in-app purchases of digital content, respectively.  Because

20 Plaintiff's alleged injury occurred in 2008 and 2009, any revisions to the contractual policies

21 during the limitations period that simply adhere to Apple's original policy of excluding App

22 Store and IAP alternatives are merely reaffirmations of its original actions taken far outside of

23 the limitations period.  *See Stanislaus Food Prods. Co.*, 2010 WL 3521979, at *17; *see also In re*

24 *Multidistrict Vehicle Air Pollution*, 591 F.2d at 72.

25       *Third*, the Complaint is bereft of any non-conclusory allegations explaining exactly how

26 Apple has modified its policies and, more importantly, how those modified policies inflicted *new*

27 injuries on Plaintiff separate and apart from the permanent injury Plaintiff allegedly suffered as a

28 result of Apple's initial decisions in 2008 (concerning the App Store) and 2009 (concerning

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

11

IAP).  In 2008, when Apple first required apps to be distributed to iOS users through the App Store, Cydia—which had ***never*** been authorized by Apple to distribute native third-party applications on iOS devices—was excluded and the "injury" of which Plaintiff now complains occurred.  Similarly, Plaintiff's challenge to IAP accrued in 2009 when Apple introduced IAP and required that all iOS developers use IAP for paid apps and in-app purchases of digital goods and services.  Thus, Plaintiff's injuries date back to 2008 and 2009 and do not constitute a new injury "even if the [Plaintiff's] [alleged] injur[ies] continue[] within the statutory period." *Pace Indus., Inc.*, 813 F.2d at 238.

*Stanislaus* is instructive.  That case involved an antitrust challenge brought by a tomato canner against manufacturers of tin products, which were used to make tin cans that the plaintiff ultimately purchased from a middle-man supplier.  The plaintiff alleged that the manufacturers had entered into a joint venture to avoid competition with each other and to fix the prices of their products.  *Stanislaus Food Prods. Co.*, 2010 WL 3521979, at *3.  The defendants moved to dismiss on statute of limitations grounds, arguing that although the plaintiff alleged that the defendants acquired monopoly power in 1986 when they formed the joint venture, the plaintiff did not allege that they used that power until 2008 when the defendants started charging plaintiff supracompetitive prices for the first time.  *Id.* at *13.  The court agreed with the defendants that the plaintiff's claims related to the formation and maintenance of the joint venture were time-barred, holding that the "act which harmed plaintiff was the formation of [the joint venture] and the conspiracy to monopolize" the market.  *Id.* at *15.  According to the court, "[t]he market was harmed and competition suffered when [the joint venture] was formed."  *Id.*  Like the market in *Stanislaus*, the market in this case—if Plaintiff's allegations are accepted as true—was harmed in 2008 and 2009, and the competition suffered when Apple introduced the App Store and IAP, respectively.

Similarly, *In re Multidistrict Vehicle Air Pollution* involved a challenge brought against four automobile manufacturers.  The plaintiff alleged that the defendants agreed not to purchase the plaintiff's "afterburner" device designed to reduce car emissions—instead opting to install different mechanisms—and thus excluded the plaintiff from the market to limit and control air

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

12

pollution.  591 F.2d at 69–70.  The defendants had each specifically rejected the plaintiff's device as of 1964, but the plaintiff did not file suit until 1970.  *Id.* at 70–71.  In affirming the district court's dismissal of the plaintiff's antitrust claims, the Ninth Circuit held that the defendants' 1964 rejection of the plaintiff's device was "irrevocable, immutable, permanent and final," and the act from which "all injury to [the plaintiff] necessarily resulted."  *Id.* at 72.  Any acts taken by the defendants after that point were nothing but "unabated inertial consequences of some pre-limitations action."  *Id.* (quoting *Poster Exchange*, 517 F.2d at 128).  The defendants' actions in *In re Multidistrict Vehicle Air Pollution* are apropos to Apple's actions in this case— Apple's decisions that the App Store be the sole app store for app distribution on iOS devices and that iOS app developers use Apple's IAP for in-app purchases of digital content were irrevocable, immutable, permanent, and final such that Plaintiff's alleged injuries necessarily resulted from those decisions.

> 3.     Apple's Alleged Technical Restrictions Do Not Restart the Limitations Period.

Lastly, the Complaint alleges that Apple has introduced certain technical restrictions built into iOS that "largely prevent users from downloading and installing competing app stores or apps that are made available directly on websites," and that "Apple placed technical restrictions on app installation through entitlements and code signing to prohibit competition in this way." Compl. ¶ 64.  According to Plaintiff, "[m]ore recently, Apple made these technical restrictions even more pervasive by introducing runtime code modification prevention, pointer authentication, physical map codesigning, memory tagging extensions, and other control mechanisms that specifically target and prevent Cydia from competing with Apple[.]"  *Id.* ¶ 65. These allegations cannot save Plaintiff.

*First*, as with Plaintiff's allegations concerning Apple's contractual policies, these allegations are noticeably undated and so are deficient for the same reasons explained above. *See supra* p. 10.

*Second*, even if the allegations were dated in some way, the Complaint fails to allege any facts explaining how these new technical modifications differed, if at all, from Apple's original

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

13

1   decision that the App Store would be the sole app store for app distribution on iOS devices and

2   that IAP be the sole app purchasing mechanism on iOS devices.  In other words, those

3   modifications are fully in service of Apple's original and permanent decisions concerning App

4   Store alternatives and app purchasing mechanisms.  Apple has implemented those technical

5   modifications to ensure that iOS users comply with the very policies Apple established in 2008

6   and 2009, and the Complaint fails to set forth facts showing how the purported technical

7   modifications do anything other than effectuate those policies.  *See Stanislaus Food Prod. Co.*,

8   2010 WL 3521979, at *17.

9          **C.      Plaintiff's Antitrust Claims for Injunctive Relief Must Also Be Dismissed**.

10         Federal antitrust claims for equitable relief are not subject to the four-year statute of

11  limitations, but rather to the doctrine of laches, which is an equitable defense that prevents a

12  plaintiff, who "with full knowledge of the facts, acquiesces in a transaction and sleeps upon [its]

13  rights." *Danjaq LLC* v. *Sony Corp.*, 263 F.3d 942, 950–51 (9th Cir. 2001) (quoting *S. Pac. Co.*

14  v. *Bogert*, 250 U.S. 483, 500 (1919) (McReynolds, J., dissenting)).  The four-year statute of

15  limitations serves as a guideline for computation of the laches period.  *Oliver*, 751 F.3d at 1086;

16  *see also, e.g.*, *Aurora Enters.*, 688 F.2d at 694 (dismissing antitrust claims for equitable relief

17  based on the four-year "guideline" furnished by the statute of limitations); *Reveal Chat Holdco,*

18  *LLC* v. *Facebook, Inc.*, 471 F. Supp. 3d 981, 991–92 (N.D. Cal. 2020) (applying the four-year

19  antitrust laches guideline to claims for prospective injunctive relief).  "Under the doctrine of

20  laches, a suit seeking equitable relief will be barred if a party has inexcusably delayed pursuing

21  [its] claim and [its] adversary has been prejudiced as a result," *Oliver*, 751 F.3d at 1085 n.4

22  (citing *Int'l Tel. & Tel. Corp.* v. *Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975)),

23  and "[t]he bare fact of delay creates a rebuttable presumption of prejudice," *Int'l Tel. & Tel.*

24  *Corp.*, 518 F.2d at 926.

25         Here, on the face of the Complaint, it is apparent that the doctrine of laches bars

26  Plaintiff's antitrust claims for injunctive relief.  By Plaintiff's own admission, "[e]ver since

27  Apple first introduced the App Store" in 2008, Apple allegedly restricted iOS users from

28  "chang[ing] their default preference to any other marketplace, such as Cydia," and "early on" in

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

14

2009, Apple's IAP was the "sole option" for in-app purchases of digital content.  Compl. ¶¶ 26, 52; *see also The App Store Turns 10*, Apple (July 5, 2018), www.tinyurl.com/App-Store-Turns-10 (last accessed Feb. 4, 2021) (cited in Compl. ¶ 24 n.13).  Therefore, Plaintiff knew in 2008 and 2009—***and has known every year for the past eleven years***—that Apple allegedly "froze[] Cydia" out of the iOS app distribution market and the iOS app payment processing market. Compl. ¶ 6.  Nevertheless, despite this knowledge, Plaintiff slept through Apple's alleged antitrust violations and is now—seven years too late—attempting to seek injunctive relief without any excuse to show for it except the resulting prejudice to Apple.  *See Int'l Tel. & Tel. Corp.*, 518 F.2d at 927 ("We do not believe that Congress intended . . . to permit potential plaintiffs to sleep through their competitors' antitrust violations and then sue many years later.).  And Plaintiff acknowledges such prejudice to Apple in the Complaint:  "the App Store has become a massive commercial success," Compl. ¶ 32, and "[i]n today's world, if you ask an iPhone user what is the 'App Store,' they will tell you it is the store that Apple includes on all new iPhones and is the distribution channel through which users locate, download, and pay for applications," *id.* ¶ 1.  If Plaintiff had filed suit sooner, Apple "could have invested its resources in shaping an alternative identity . . . in the minds of the public."  *Jarrow Formulas, Inc.* v. *Nutrition Now, Inc.*, 304 F.3d 829, 839 (9th Cir. 2002); *see also Hot Wax, Inc.* v. *Turtle Wax, Inc.*, 191 F.3d 813, 813 (7th Cir. 1999) ("The market position pursued by [the defendant] with respect to the products at issue was uncontested by [the plaintiff] for years and courts have held that investments to exploit such a position are sufficient prejudice to warrant the application of the doctrine of laches."); *Int'l Tel. & Tel. Corp.*, 518 F.2d at 927 ("The potential for economic disruption is so great that when placed in private hands[,] it should be circumscribed by the requirement that injunction-seeking plaintiffs act with reasonable promptness unless excused by equitable considerations.").  Accordingly, Plaintiff's claims for injunctive relief for Apple's alleged violations of the Sherman Act are also time-barred and should be dismissed.

## III.   PLAINTIFF'S UCL CLAIM IS ALSO BARRED BY A FOUR-YEAR STATUTE OF LIMITATIONS

Plaintiff also brings a claim under both the "unlawful" and "unfair" prongs of

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

15

California's Unfair Competition Law ("UCL").  Compl. ¶¶ 147, 148 (Count 4).  Claims brought

pursuant to the UCL are also subject to a four-year statute of limitations, *see* Cal. Bus. & Prof.

Code § 17208 (UCL); *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d at 1208, and

begin to accrue at the time that a plaintiff suffers its injury, *see In re Animation Workers*

*Antitrust Litig.*, 87 F. Supp. 3d at 1210.  Therefore, because Plaintiff's injury accrued no later

than 2009, for the reasons discussed above, Plaintiff's UCL claim also is time-barred and should

be dismissed.

## CONCLUSION

For the above reasons, Plaintiff's claims should be dismissed.

DATED: February 4, 2021        Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  */s/ Karen L. Dunn*
    KAREN L. DUNN (DC SBN 1002520; *pro hac vice*)
    WILLIAM A. ISAACSON (DC SBN 414788; *pro hac vice*)
    JESSICA E. PHILLIPS (DC SBN 991072; *pro hac vice*)
    2001 K Street, NW
    Washington, D.C. 20006-1047
    Telephone: (202) 223-7300
    Facsimile: (202) 223-7420
    kdunn@paulweiss.com
    wisaacson@paulweiss.com
    jphillips@paulweiss.com

    YAHONNES S. CLEARY (NY SBN 4802492; *pro hac vice*)
    1285 Avenue of the Americas
    New York, NY 10019-6064
    Telephone: (212) 373-3000
    Facsimile: (212) 757-3990
    ycleary@paulweiss.com

    MEREDITH R. DEARBORN (SBN 268312)
    943 Steiner St.
    San Francisco, CA 94117
    Telephone: (202) 223-7300
    Facsimile: (202) 223-7420
    mdearborn@paulweiss.com

    *Counsel for Defendant Apple Inc.*

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SAURIKIT, LLC'S COMPLAINT;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 4:20-cv-08733-YGR

16