1  GIBSON, DUNN & CRUTCHER LLP
   JAY P. SRINIVASAN, SBN 181471
2  jsrinivasan@gibsondunn.com
   333 South Grand Avenue Los Angeles, CA
3  90071-3197 Telephone: 213.229.7000
   Facsimile: 213.229.7520
4
   BETTY X. YANG (Texas Bar No. 24088690;
5  *pro hac vice*)
   byang@gibsondunn.com
6  2100 McKinney Avenue, Suite 1100
   Dallas, TX 75201
7  Telephone: 214.698.3100
   Facsimile: 214.571.2900
8
   HENRY H. CORNILLIE, SBN 324821
9  hcornillie@gibsondunn.com
   555 Mission Street, Suite 3000
10 San Francisco, CA 94105-0921
   Telephone: 415.393.8200
11 Facsimile: 415.393.8306

12
13 Attorneys for Defendant, APPLE INC.

14              **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

16                   **OAKLAND DIVISION**

17

18 SAURIKIT, LLC,                          CASE NO. 4:20-cv-08733-YGR

19          Plaintiffs,

20     v.                                  **DEFENDANT APPLE INC.'S NOTICE OF
                                           MOTION AND MOTION TO DISMISS
21 APPLE INC.,                             PLAINTIFF SAURIKIT, LLC'S FIRST
                                           AMENDED COMPLAINT; SUPPORTING
22          Defendant.                     MEMORANDUM OF POINTS AND
                                           AUTHORITIES**
23
                                            Date:  March 15, 2022
24                                          Time:  2 p.m.
                                            Place: Courtroom 1, 4th Floor
25
                                           The Honorable Yvonne Gonzalez Rogers
26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................. 1

STATEMENT OF REQUESTED RELIEF .......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

I. INTRODUCTION ..................................................................................... 1

II. PROCEDURAL BACKGROUND ........................................................... 4

III. ARGUMENT .............................................................................................. 5

    A. Plaintiff's Claims Remain Time-Barred Under the Four-Year Statute of Limitations. ............................................................................................. 6

    B. Plaintiff's Claims Still Do Not Allege a Continuing Violation Because Apple's Design Decisions Regarding iOS and the App Store Have Been Fixed and Unwavering Since Plaintiff's Claims Accrued. ................................... 7

    C. None of Plaintiff's New Allegations Transforms Apple's Alleged Conduct into a Continuing Violation. ................................................................................. 9

        1. Plaintiff's New Allegations Regarding Apple's Conduct Toward Various Third Parties Have Already Been Rejected by the Court. ................... 9

        2. Plaintiff's New Allegations That Apple Reaffirmed Its 2008/2009 Policy Regarding App Distribution on iOS Only Confirms that the Continuing Violation Doctrine Does Not Apply. ................................. 11

        3. Plaintiff's New Allegations About Apple's Enforcement of Its 2008 Policy and Policing Plaintiff's Illicit Internet-Based Activities Fail to Revive the Statute of Limitations .................................................. 12

    D. Plaintiff's Claims For Injunctive Relief Are Barred By Plaintiff's Unreasonable Delay. ....................................................................................... 16

    E. Plaintiff Should Be Denied Leave to Amend Its Claims. ......................... 18

IV. CONCLUSION ......................................................................................... 18

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*,
  592 F.3d 991 (9th Cir. 2010).........................................................................................16

*In re Animation Workers Antitrust Litig.*,
  87 F. Supp. 3d 1195 (N.D. Cal. 2015) ........................................................................6, 14

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)...........................................................................................................10

*Aurora Enterprises v. NBC*,
  688 F.2d 689 (9th Cir. 1982)..........................................................................................8, 11

*Columbia Steel Casting Co., Inc. v. Portland Gen. Elec. Co.*,
  111 F.3d 1427 (9th Cir. 1996)...............................................................................................8

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001)..............................................................................................16

*David Orgell v. Geary Stores*,
  640 F.2d 936 (9th Cir. 1981)..........................................................................................8, 11

*Garrison v. Oracle*,
  159 F. Supp. 3d 1044 (N.D. Cal. 2016) ....................................................................3, 11, 15

*Hawthorne Hangar Ops., L.P. v. Hawthorne Airport, LLC*,
  No. CV 20-10744 PA, 2021 WL 3264420 (C.D. Cal. Apr. 27, 2021)......................3, 15

*Hennegan v. Pacifico Creative Serv., Inc.*,
  787 F.2d 1299 (9th Cir. 1986)..........................................................................................8, 12

*Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*,
  518 F.2d 913 (9th Cir. 1975)..............................................................................................16

*Klamath-Lake Pharma. Ass'n v. Klamath Med. Serv. Bureau*,
  701 F.2d 1276 (9th Cir. 1983)...............................................................................................18

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ...........................................................................14

*In re Multidistrict Vehicle Air Pollution*,
  591 F.2d 68 (9th Cir 1979)...................................................................................................7

*Pace Indus., Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987)..........................................................................3, 4, 5, 6, 7, 10

*PBTM LLC v. Football Northwest LLC*,
  511 F. Supp. 3d 1158 (W.D. Wash. 2021) ..........................................................................8

**TABLE OF AUTHORITIES**
(continued)

*Red Lion Medical Safety v. Ohmeda*, <span>Page(s)</span>
    63 F. Supp. 2d 1218 (E.D. Cal. 1999) ........................................................................12

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    471 F. Supp. 3d 981 (N.D. Cal. 2020) ................................................................16, 17

*Samsung v. Panasonic*,
    747 F.3d 1199 (9th Cir. 2014) ..................................................................................8

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*,
    No. CV F 09-0560 JLO SMS, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) ...............11

**STATUTES**

15 U.S.C. § 15b ............................................................................................................6

Cal. Bus. & Prof. Code § 17208 .....................................................................................6

**OTHER AUTHORITIES**

App Store Review Guidelines, Apple (Oct. 22, 2021), https://developer.apple.com/app-
    store/review/guidelines/ (last visited Jan. 21, 2022) ....................................................6

*The App Store turns 10* (July 5, 2018), https://www.apple.com/newsroom/2018/07/app-store-turns-
    10/ (last visited Jan. 21, 2022) ................................................................................17

https://www.theverge.com/2018/12/16/18143422/cydia-disables-in-app-purchases-ios-jailbreak-
    store-apple-iphone ..................................................................................................16

https://www.reddit.com/r/jailbreak/comments/a5wfq9/news_andrew_wiik_recommend_that_everyon
e_removes/ ..............................................................................................................16

APPLE'S MOTION TO DISMISS SAURIKIT'S FIRST AMENDED COMPLAINT
CASE NO. 20-CV-05640-EMC

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 15, 2022, at 2 p.m., or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, Oakland Federal District Courthouse, Courtroom 1, 4th Floor, at 1301 Clay Street, Oakland, CA 94612, before the Hon. Yvonne Gonzales Rogers, Defendant Apple Inc. ("Apple") will and hereby does move the Court to dismiss Plaintiff SaurikIT, LLC's ("SaurikIT" or "Plaintiff") First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted.  This Motion is supported by this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the [Proposed] Order filed herewith; the pleadings and papers on file herein; and such other matters that may be presented to the Court at the hearing.

## STATEMENT OF REQUESTED RELIEF

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Apple requests that the Court dismiss Plaintiff's FAC with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The First Amended Complaint fails to deliver on Plaintiff's promise to the Court that, if given a second opportunity, it could plead timely claims.  The Court dismissed Plaintiff's original Complaint because the alleged conduct was more than a decade old and because Plaintiff alleged no "new act relevant to [Plaintiff]" within the limitations period that was not a mere reaffirmation of Apple's 2008 and 2009 design decisions for its iOS devices.  Hr'g Tr. (Jan. 5, 2022) ("Tr.") at 9:7–16.  In seeking leave to amend, Plaintiff represented to the Court that it could supplement its complaint with factual allegations that Apple did something new and different within the limitations period.  The Court gave Plaintiff that chance, but made clear it expected Plaintiff to plead a "specific overt act relative to [itself]" that is "more recent," and "different than what was happening in 2008 and 2009."  Tr. at 23:19–25.  The FAC does not meet this mark, and instead piles on more allegations of the kind that the Court has already found insufficient and vague insinuations about conduct that, at best, merely reaffirms time-barred conduct.  And with respect to Plaintiff's express promise that it would state facts "from 2019 that specifically reference Cydia and technological changes [Apple]

took specifically to exclude Cydia at that time," Tr. 17:17–20, the FAC again fails to deliver, vaguely alleging only that Apple made "technological changes" to iOS in 2019 that were the "culminat[ion]" of "semi-regular technological updates" Apple has been making since "2008-2018."  FAC ¶ 46.  Accordingly, the FAC suffers from the same defects as the original Complaint, and it should meet the same fate, this time with prejudice.  Given two chances, Plaintiff has failed to plead a claim against Apple that accrued within the applicable statute of limitations.

Plaintiff is the developer of Cydia, a software program that has never been available as an app on the App Store.  Rather, Cydia has been offered for download on the internet, and can work only with iOS devices whose operating systems have been "jailbroken."  Cydia has not been authorized for use on iOS devices since it was first developed in 2007.  In 2020, Plaintiff sued for the first time challenging Apple's long-standing policy.  In granting Apple's Motion to Dismiss Plaintiff's original Complaint, the Court found that Plaintiff's claims are all time-barred because the conduct at issue— Apple's design and implementation of its iOS devices to preclude third-party app stores and to require the use of Apple's in-app purchasing process for apps offering digital goods and services—is explicitly alleged to have taken place in 2008 and 2009.  The Court further found that the continuing violation doctrine did not apply to save Plaintiff's claims because Plaintiff failed to allege a new overt act by Apple directed at Plaintiff within the limitations period (*i.e.*, after December 2016) that was not merely a reaffirmation of Apple's original conduct in the preceding eight years since 2008.  In so holding, the Court rejected Plaintiff's allegations about Apple's "millions" of device sales, Apple's "hundreds of thousands" of Apple Developer Agreements and Developer Program License Agreements, Apple's updates to and enforcement of its App Review Guidelines and their enforcement, and Apple's software updates and related "technical restrictions" in the iOS operating system as insufficient to restart the statute of limitations.

The new allegations in the FAC are more of the same, falling into two main categories, neither of which is sufficient to save Plaintiff's claims:  (1) more allegations about Apple's conduct aimed at third parties, primarily consumers and developers, but not at Plaintiff; and (2) more allegations that Apple consistently reaffirmed and policed its definitive decision in 2008 to establish its App Store as the only means of distribution of native iOS apps on iOS devices.  With respect to

the first category, Plaintiff simply adds to its existing allegations that catalog a variety of alleged challenges that other third parties—including app developers, customers, government regulators, and other would-be app stores—have levied against Apple. *See, e.g.,* FAC ¶¶ 5–6, 28–29. But none of this alleged conduct is aimed at Plaintiff—in fact, the FAC could not be more explicit that it is aimed at others. Not only does Plaintiff lack antitrust standing to bring such claims, for the continuing violation doctrine to apply, the recent conduct must "inflict[] new and accumulating injury on the ***plaintiff***." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987) (emphasis added). As the Court asked Plaintiff directly at the hearing: "[W]hat is the specific overt act relative to your client, not to a consumer, not a developer, but to your client?" Tr. at 9:7–9. Plaintiff cannot borrow conduct alleged to have harmed third parties to revive its own stale claims. Thus, Plaintiff's additions to the FAC do not save its own claims from the dismissal they deserve.

In the second category, Plaintiff adds allegations that Apple consistently reinforced and policed its 2008 policy precluding alternative app stores on iOS devices. *See, e.g.*, FAC ¶¶ 41, 67–77. Plaintiff expressly alleges that Apple's efforts to ensure that the App Store would be the sole source of iOS app distribution began in 2008 and remained unchanged through the present. *See, e.g., id.* ¶ 45 ("Apple has engaged in a continuous campaign to prevent iPhone users and iOS app developers from using or selecting other third party services in order to distribute iOS apps"). Plaintiff does not allege that these efforts changed in character in the last four years; only that Apple implemented these measures consistently to keep pace with would-be violators, including Plaintiff, who worked to circumvent Apple's technological and contractual implementations of its 2008 policy.

These allegations fail to plead any specific conduct by Apple within the limitations period. If they did, they would not suffice to revive Plaintiff's time-barred claims because "[m]erely carrying out during the limitations period a final, binding decision made prior to the limitations period does not qualify as a new overt act" that would trigger the continuing violation doctrine. *Garrison v. Oracle*, 159 F. Supp. 3d 1044, 1071–72 (N.D. Cal. 2016). Or, as another court in this Circuit recently held, replacing a "chain link" fence with an updated security fence is "not a new and independent act, but [] rather a reaffirmation of a previous act." *Hawthorne Hangar Ops., L.P. v. Hawthorne Airport, LLC*, No. CV 20-10744 PA (ASx), 2021 WL 3264420, at *4–5 (C.D. Cal. Apr. 27, 2021). The same

3

is true for Plaintiff's allegations here.  Plaintiff does not allege that Apple's 2008 decision to preclude third-party app stores was anything other than final and binding nor that Apple ever wavered or varied from this position (nor could Plaintiff truthfully make such allegations).  Apple's upgrading of its proverbial "security fences" merely reaffirms the original policy and implementation, and is not sufficient to trigger the continuing violation doctrine.  *See Pace Industries*, 813 F.2d at 238.  Accordingly, the continuing violation doctrine does not save Plaintiff's time-barred damages claims.

For the same reasons, Plaintiff's UCL claim is time-barred, and for similar reasons, Plaintiff's equitable relief claims are barred by the doctrine of laches.

## II.  PROCEDURAL BACKGROUND

On December 10, 2020, Plaintiff SaurikIT, LLC filed its original Complaint alleging that Apple monopolizes the markets for "iOS app distribution" and "iOS app payment processing" by "preinstalling [the App Store] on all iOS devices," "technologically locking down the iPhone," "and imposing contractual terms on users" and "iOS app developers" that preclude third-party app stores such as Cydia purports to be.[1]  Dkt. 1 at ¶¶ 5–6.  Notably, the Complaint expressly pleaded that the challenged practices have been in existence "[e]ver since Apple first introduced the App Store" in 2008.  *Id*. at ¶ 26.  Although the Complaint also vaguely alleged that Apple has "continuously implemented" more restrictive contractual measures and "technical restrictions" over the years, *id*. at ¶¶ 64-65, it failed to identify any such restrictions that were different in nature than what Apple was alleged to have been doing since its original policy to distribute native apps on iOS devices solely through the App Store.

Apple moved to dismiss on the basis of the statute of limitations and laches.  Dkt. 35.  In opposing Apple's motion, Plaintiff argued that the statute of limitations is restarted every time Apple

---

[1]  During the hearing, the Court asked Plaintiff whether it intended to amend its allegations of an "iOS app distribution" market and/or "iOS app payment processing" market in light of the Court's decision in *Epic v. Apple*, issued after the filing of the original Complaint.  Tr. 21:12–22.  In response, counsel for Plaintiff represented: "We do not allege that the fore market is iOS but, rather, smartphones."  *Id.* at 22:2–3.  But, as with the original Complaint, the FAC alleges only that "Apple Monopolizes the iOS App Distribution and iOS App Payment Processing Markets."  FAC ¶ 11.  Apple has limited this motion to the dispositive time-bar issue and has not moved to dismiss the FAC on this ground; but if this case were to proceed, the fatal defect in Plaintiff's proposed market definition would have to be addressed through motion practice.

"enter[s] into new unlawful agreements, modif[ies] its anticompetitive policies and technical restrictions, and enforce[es] its agreements and policies"—either because each of these constitutes a new overt act, or because "Apple is engaged in continuing antitrust violations." Dkt. 42 at 13.

At the hearing, the Court rejected Plaintiff's theory that "every time [Apple] operate[s] on a daily basis, that restarts the statute of limitations," noting that Plaintiff's interpretation is inconsistent with the law and would "vitiate[] the statute of limitations." Tr. at 7:16–8:16. The Court gave Plaintiff the opportunity to explain how the continuing violation doctrine could apply to save its claims, asking directly:  (1) "[W]hat is the specific overt act relative to your client, not to a consumer, not to a developer, but to your client?"  *Id*. at 9:7–9 (emphasis added). And:  (2) "How is it different than what was happening in 2008 and 2009?"  *Id*. at 12:11–14. When Plaintiff was unable to point to allegations in the original Complaint answering these questions, the Court granted—with leave to amend—Apple's motion to dismiss on the basis of the statute of limitations, finding that the Complaint did not allege "a new act relevant to [Plaintiff]" within the limitations period that was not a mere reaffirmation of Apple's decisions in 2008 and 2009.  *Id*. at 23:19–25.

### III.  ARGUMENT

Plaintiff's FAC suffers from the same defects that required dismissal of its initial Complaint. As before, Plaintiff's amended allegations make clear its claims accrued no later than 2009 and so are time-barred. Plaintiff again attempts to invoke the continuing violation doctrine to salvage its claims, but Plaintiff again fails under controlling law. Although Plaintiff adds a number of new allegations to its FAC, none of them address the deficiencies that led the Court to dismiss the original Complaint.

Plaintiff has not alleged that Apple engaged in "new and independent" overt acts within the limitations period that are "not merely [] reaffirmation[s] of a previous act" outside the limitations period, nor has Plaintiff alleged that any such new act "inflict[ed] new and accumulating injury on the plaintiff."  *Pace Indus.*, 813 F.2d at 238. Instead, Plaintiff's new allegations describe non-actionable conduct and harm directed at third parties; and non-actionable conduct that the Court already has ruled to be mere reaffirmations of Apple's 2008/2009 policies and its follow-up enforcement of those policies to preclude sideloading and alternate app stores. None of these new allegations satisfy the Court's simple direction that Plaintiff must be "explicit" in pleading that "something new" took place

5

within the limitations period.  Tr. at 34:1–8.  Accordingly, the Court should now dismiss Plaintiff's claims with prejudice.

A.      **Plaintiff's Claims Remain Time-Barred Under the Four-Year Statute of Limitations.**

Federal antitrust claims seeking damages are subject to a four-year statute of limitations, 15 U.S.C. § 15b, and accrue at the time "a plaintiff is injured by an act of the defendant," *Pace Indus.*, 813 F.2d at 237.  A claim of anticompetitive conduct under California's Unfair Competition Law ("UCL") is subject to the same four-year statute of limitations and accrual rules as the federal antitrust claims.  Cal. Bus. & Prof. Code § 17208; *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208 (N.D. Cal. 2015); *see* Dkt. 42 at 23.  Accordingly, Apple analyzes Plaintiff's federal antitrust claims and its UCL claim in parallel.

Like the original Complaint, the FAC concedes that ever since Apple introduced the iOS App Store in July 2008, it was preinstalled on all iOS devices and ***the sole means*** of distributing native iOS applications on iOS devices and the iOS operating system that runs on them.  FAC ¶ 44; *see also id.* ¶ 44 (the App Store is "the sole marketplace and distributor for iOS apps").  The FAC further acknowledges that these "design choices," which prohibit third parties from directly side-loading apps onto iOS devices or operating their own app stores on iOS devices, have been present in "every new version of iOS since 2008."  FAC ¶¶ 45–46, 75–76; App Store Review Guidelines, Apple (Oct. 22, 2021), https://developer.apple.com/app-store/review/guidelines/ (last visited Jan. 21, 2022) (cited in FAC ¶ 30 n.20); *see* Dkt. 36.  ***Notably, Plaintiff does not allege that Apple ever rescinded, modified, backtracked from, or ever did anything other than repeatedly reaffirm this decision and implementation over the years.***  Similarly, Plaintiff admits that Apple designed its in-app payment API, IAP, "early on" as the required payment method for sales of digital content.  FAC ¶¶ 57, 82.  Again, Plaintiff does not allege Apple has ever wavered from this IAP requirement.[2]

---

[2] Plaintiff also does not allege it was ever subject to this purported tie.  Because Plaintiff alleges that it was not allowed to operate on iOS from the moment Apple introduced the App Store in 2008, Plaintiff truthfully could not allege that it was ever required to use IAP in any context.  In fact, Plaintiff alleges the opposite:  that "users have always been able to obtain [Plaintiff's marketplace] directly from the internet (i.e., not through Apple)."  FAC ¶ 4.

6

1    Because Plaintiff's claims accrued by no later than 2009, the statute of limitations expired

2    four years later in 2013, seven years before Plaintiff filed its original Complaint.  Plaintiff's claims

3    are thus plainly time-barred under the Sherman Act's and the UCL's four-year statute of limitations.

4    **B.    Plaintiff's Claims Still Do Not Allege a Continuing Violation Because Apple's Design of**
     **iOS and the App Store Have Been Fixed and Unwavering Since Plaintiff's Claims**

5    **Accrued.**

6    Plaintiff also cannot rely on the continuing violation doctrine because, as with the original

7    Complaint, the FAC fails to allege that Apple did anything that would resuscitate Plaintiff's stale

8    claims.  To invoke the continuing violation doctrine, Plaintiff must allege that Apple engaged in

9    conduct that is ***both*** (i) a "new and independent" overt act that is "not merely a reaffirmation of a

10   previous act" from before the limitations period and (ii) and one that "inflict[s] new and accumulating

11   injury ***on the plaintiff***."  *Pace Indus.*, 813 F.2d at 238 (emphasis added).  Courts in the Ninth Circuit

12   have provided guidance for what type of conduct qualifies as a continuing violation as well as certain

13   bright lines for when the doctrine should not be applied.

14   For example, the "unabated inertial consequence of some pre-limitations action" is not the

15   same as a continuing violation and therefore does not restart the limitations period.  *In re Multidistrict*

16   *Vehicle Air Pollution*, 591 F.2d 68, 72 (9th Cir 1979).  In *Vehicle Air Pollution*, prior to the statute of

17   limitations period, each defendant "expressed without qualification its intention not to use" plaintiff's

18   anti-air pollution device on its cars and instead integrated their own respective anti-pollution

19   solutions into their vehicles.  *Id.* at 74, 70.  The Ninth Circuit found that defendants "had indicated

20   clearly and irrevocably an intent to look to their own devices" instead of plaintiff's product prior to

21   the limitations period and that "[w]hatever hope of business [plaintiff] may have clutched, its source

22   could not have been actions or words of the [defendants]."  *Id.* at 72.  The Ninth Circuit disagreed

23   with plaintiff's argument that defendants' conduct was a continuing violation because it found that

24   their rejection was "irrevocable, immutable, permanent and final," in part because defendants moved

25   ahead with their own devices that were then "integrated into" their broader plans and designs of their

26   cars.  *Id.*

27   The *Vehicle Air Pollution* case is on all fours with the allegations at issue.  Here too, Apple is

28   alleged to have definitively rejected Plaintiff's Cydia product, its alternative app store, in favor of

---

7

Apple's own App Store, well before the start of the limitations period.  Further, Apple's refusal to accommodate third-party app stores is alleged to be as steadfast and resolute as the rejection from defendants in *Vehicle Air Pollution*; indeed the passage "whatever hope of business [plaintiff] may have clutched, its source could not have been actions or words of [defendants]" applies with equal or more force to Plaintiff's efforts to force itself onto Apple's platform.  And here too, Apple is alleged to have accompanied its pre-limitations rejection of Plaintiff's app store by permanently integrating its own App Store into the design of its products—in its iOS devices and in its iOS operating system.  Courts in the Ninth Circuit repeatedly have followed *Vehicle Air Pollution* in rejecting application of the continuing violation doctrine where the pre-limitations conduct was a refusal to deal followed by repeated reaffirmation of that initial refusal.  *See, e.g., David Orgell v. Geary Stores*, 640 F.2d 936, 938 (9th Cir. 1981) ("reaffirmation of the original decision not to deal with the plaintiff" does not restart the limitations period); *PBTM LLC v. Football Northwest LLC*, 511 F. Supp. 3d 1158, 1177 (W.D. Wash. 2021) ("The line of cases relied upon by Defendant follow similar facts as [*Vehicle Air Pollution*], where defendants' subsequent refusals to trade were merely reaffirmations of the original decision not to deal with plaintiff").  In *Aurora Enterprises v. NBC*, the Ninth Circuit expressly distinguished between "an allegation of a refusal deal," where a continuing violation should not be found, as opposed to "an allegation of enforcement of an illegal contract," in which case the continuing violation doctrine "may, under certain circumstances, cause renewal of an injury and restart the statute of limitations," 688 F.2d 689, 694 (9th Cir. 1982).  That circumstance is clearly not present here, where Plaintiff has conceded that it had no relationship at all with Apple.  *See* Tr. at 24:19–25:1.  In fact, courts in the Ninth Circuit generally have applied the continuing violation doctrine only in the context of Sherman Act Section 1 claims where there is an allegation of an ongoing agreement or other concerted action between multiple co-conspirators.  *See Samsung v. Panasonic*, 747 F.3d 1199, 1204 (9th Cir. 2014) ("As our sister circuits have said, the typical antitrust continuing violation occurs when conspirators continue to meet to fine-tune their cartel agreements."); *see also Columbia Steel Casting Co., Inc. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1444 (9th Cir. 1996) (ongoing agreement by defendants not to compete); *Football Northwest LLC*,

511 F. Supp. 3d at 1177 (continued and active enforcement by defendants of pre-limitations agreement).

Unless courts are willing to jettison the Sherman Act's four-year statute of limitation altogether, not every case can qualify for the continuing violation doctrine.  The allegations at bar present an easy case:  under every authority in the Ninth Circuit, Apple's 2008 decision to establish the App Store as the only means of native app distribution on iOS—a decision that Cydia expressly alleges to have been implemented and reaffirmed by Apple unabatedly for eight years before the start of the limitations period—is the classic example of an "irrevocable, immutable, permanent and final" act for which the continuing violation doctrine does not apply to save Plaintiff's stale claims.

**C.   None of Plaintiff's New Allegations Transforms Apple's Alleged Conduct into a Continuing Violation.**

As set forth above, the Court dismissed the original Complaint on the basis that the allegations therein did not describe any continuing violation by Apple.  The Court made clear that, for Plaintiff to save its stale claims, it must instead allege that Apple did something new and independent within the limitations period (December 2016 to December 2020) that was different than what Apple is alleged to have done in the eight years preceding the limitations period and that caused some new and incremental harm to Plaintiff.  Plaintiff's new allegations fail to meet this mark.

**1.   Plaintiff's New Allegations Regarding Apple's Conduct Toward Various Third Parties Have Already Been Rejected by the Court.**

Despite the Court's admonition that allegations directed at third parties could not form a basis for Plaintiff's claims, Plaintiff nevertheless adds pages of new material regarding alleged Apple conduct directed at third parties.  *See* Tr. at 9:7–12.  These allegations are a grab bag of challenges borrowed from other proceedings against Apple and describe conduct that Plaintiff does not have standing to complain about.  For example, among Plaintiff's new allegations are yet more claims that Apple acted improperly with respect to iOS users (*see* FAC ¶¶ 28–29), app developers in general (*see* ¶¶ 32–33), specific app developers by name (*see* ¶¶ 70, 74), other would-be third-party app stores (*see* ¶ 72), and even more allegations concerning Epic Games (*see* ¶ 57).  None of these allegations are relevant because none describe alleged anticompetitive conduct directed at Plaintiff itself.

1   Plaintiff is neither a consumer nor an app developer.  Apple has never had any business relationship

2   with Plaintiff.

3   The Court's admonition is consistent with binding authority.  As a threshold matter, a Plaintiff

4   does not have antitrust standing to bring claims that are alleged to have caused antitrust injury to third

5   parties.  *See Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 537–544

6   (1983).  Leaving that defect aside, the standard for a continuing violation requires the allegation that

7   defendant's new activities within the limitations period resulted in a new and accumulating injury ***to***

8   ***the Plaintiff***.  *See Pace Indus.*, 813 F.2d at 238.

9   Not surprisingly, Plaintiff fails to allege how it has been injured by any of this purported

10   conduct.  For example, Plaintiff does not allege it has ever been subject to the alleged tie or to the app

11   review process.  Nor does Plaintiff allege that, but for Apple's alleged conduct, it would provide

12   payment processing services to apps distributed through the App Store.  Instead, as Plaintiff now

13   openly acknowledges (and discussed in more detail below), its business has always been to distribute

14   its software to jailbroken iPhones "via the internet" and not through the App Store or on the iOS

15   platform at all.  *See id.* ¶ 24 ("to install Cydia on their iPhone [a user] must go through . . . a process

16   called 'jailbreaking'").[3]

17   Similarly, Plaintiff alleges injuries from Apple's relationship with iPhone purchasers.  The

18   FAC adds more details to Plaintiff's allegation in the original Complaint that Apple voids iPhone

19   warranties for jailbroken devices, FAC ¶¶ 28–29, which has had the effect of "steer[ing] customers

20   away from Cydia." *Id.* ¶ 83.  But Plaintiff alleges no facts whatsoever as to how the purported

21   warranty term has caused fewer customers to transact with Plaintiff.  And, as the Court already

22   acknowledged at the hearing, Plaintiff's vague suggestion that, but for the restrictions in Apple's

23   contracts with consumers, consumers would jailbreak their phones and install Cydia's app store is

24   rank speculation.  Tr. at 9:7-16.  Indeed, Plaintiff alleges that the offending consumer contracts and

---

[3]  "Jailbreaking" is a process by which a user disables or circumvents certain technology on the iOS device and operating system that is designed to keep the device free from security and privacy threats.  Jailbreaking is not the only exploit that has been developed for disabling or circumventing the security protections in iOS, but it is the only one alleged to have been employed by Plaintiff.

APPLE'S MOTION TO DISMISS SAURIKIT'S FIRST AMENDED COMPLAINT
CASE NO. 20-CV-05640-EMC

warranty terms were in place in 2009, when Plaintiff's business was allegedly at its zenith.  FAC ¶¶ 25, 29.  Plaintiff alleges that jailbreaking has always voided consumer warranties, and Cydia has always worked only on jailbroken devices.  *Id*. ¶¶ 24, 28–29.  These additional allegations confirm the time-bar rather than avoid it.

The Court already rejected Plaintiff's related third-party-based argument that each new alleged "tying agreement[] against both consumers and developers" constitutes a new overt act that restarts the statute of limitations on Plaintiff's stale claims.  Tr. at 9:7–11.  Yet Plaintiff doubles down here too, arguing once again that a new overt act occurs with "every new iPhone device activation" and "every new iOS app developer" that contracts with Apple.  FAC ¶ 5.

As the Court has already recognized, Plaintiff's erroneous interpretation of the law would "defeat any statute of limitations argument" because, under Plaintiff's theory, a defendant's continued "operat[ion] on a daily basis" as a business would continuously "restart[] the statute of limitations."  Tr. 7:16–8:16.  The Court's observations are well grounded in the law:  Ninth Circuit authority consistently holds that "[m]erely carrying out during the limitations period a final, binding decision made prior to the limitations period does not qualify as a new overt act."  *Garrison v. Oracle*, 159 F. Supp. 3d at 1071–72; *Aurora Enterprises*, 688 F.2d at 694; *Orgell*, 640 F.2d at 936 ("reaffirmation of the original decision not to deal with the plaintiff" does not restart the limitations period).  "Any other holding would destroy the function of the statute [of limitations], since parties may continue indefinitely" to sell products, contract with business partners, and otherwise implement a decision made or "act performed in the distant past."  *Aurora*, 688 F.2d at 694; *see also Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, No. CV F 09-0560 JLO SMS, 2010 WL 3521979, at *16 (E.D. Cal. Sept. 3, 2010) ("[c]ontinual purchasing of the products is merely an affirmation of defendants' prior conduct" that does not restart the statute of limitations).

### 2.  Plaintiff's New Allegations That Apple Reaffirmed Its 2008/2009 Policy Regarding App Distribution on iOS Only Confirms that the Continuing Violation Doctrine Does Not Apply.

Next, Plaintiff adds a number of allegations in the FAC that, after Apple's 2008 decision to make the App Store the sole source of native iOS app distribution on iOS devices, Apple reinforced this policy consistently by embodying this decision into its agreements with iOS users and

11

developers, including within the limitations period.  The FAC, however does not allege how Apple's conduct changed within the limitations period (*i.e.*, from December 2016 to December 2020), and in fact makes even more clear that Apple's 2008/2009 policies went forward unabated and unchanged from when they were first introduced:  "[E]very single time an iPhone user activates a new iPhone—including the brand new models Apple introduced every year from 2008 through the present (including 15 different new models in the four years preceding the original complaint in this lawsuit), Apple required users to agree to these terms and, just as importantly, Apple regularly enforced those terms against users, including in the four years preceding this lawsuit."  FAC ¶ 29; *see also id.* ¶ 28 (Apple's prohibition of third-party app stores "has continued with the introduction of every new model of the iPhone since 2008, including every new model of the device that Apple introduced and began selling for the first time within the four years preceding the original complaint in this lawsuit"); ¶ 45 ("Apple has engaged in a continuous campaign to prevent iPhone users and iOS app developers from using or selecting other third party services in order to distribute iOS apps").

Plaintiff's new allegations only confirm that Apple has never wavered from its 2008/2009 policies and that these policies did not change in character within the limitations period as compared to the pre-limitations period.  Further, even the cases upon which Plaintiff has relied, and some of which it cites in its FAC, have held that the continuing violation doctrine should not be applied where a pre-limitations refusal to deal is subsequently enshrined in the defendant's products or otherwise entrenched through its conduct, which is exactly the allegation here.  *See Red Lion Medical Safety v. Ohmeda*, 63 F. Supp. 2d 1218, 1224 (E.D. Cal. 1999) (continuing violation found, in part, because "there is no technological impediment or necessary lead time associated" with the defendant reversing course on its pre-limitations conduct); *Hennegan*, 787 F.2d at 1300–01 (continuing violation should not be found where undoing the pre-limitations conduct would take "considerable lead time").

### 3. Plaintiff's New Allegations About Apple's Enforcement of Its 2008 Policy and Policing Plaintiff's Illicit Internet-Based Activities Fail to Revive the Statute of Limitations.

Despite Plaintiff's renewed concession that Plaintiff was completely excluded from operating Cydia on iOS devices long before the limitations period ran, *see* FAC ¶ 45, the FAC now alleges that

12

Plaintiff nevertheless continued to operate in an illicit capacity by distributing apps "made available for download and installation via the internet (as opposed to the App Store)." *Id*. ¶ 10. Plaintiff further adds that, to "avoid the technological restrictions Apple throws in the way of third party app store providers like Cydia," users "***must*** go through . . . a process called 'jailbreaking'" their phones to use Plaintiff's app store. *Id*. ¶ 24 (emphasis added). The FAC then says that, in response, Apple has taken a series of contractual and technological steps to combat illicit activity on iOS that have made it more difficult for Plaintiff to operate in violation of Apple's 2008/2009 policies on jailbroken devices. *See, e.g., id*. ¶ 46. These allegations are summarized in Paragraph 6 of the FAC:

> . . . from 2008 on[], Apple would make technological updates approximately every six to nine months on either new models of iPhones or in new versions of iOS, or both. These technological updates impeded competing app stores' (like Cydia's) ability to operate on iPhones, and piggybacking on and heightened the effects of other anticompetitive acts Apple took every year through the present with respect to imposing and enforcing exclusionary agreements on both iPhone consumers and iOS app developers . . .

FAC ¶ 6. Notably, Plaintiff affirmatively alleges that Apple's policing activity has occurred regularly and consistently since 2008, when Apple made the App Store the sole means of distributing native iOS apps on iOS. *See also id*. ¶ 46 ("During the 2008–2018 period, the technological constraints were an increased and more aggressive version of semi-regular technological updates Apple made as part of its broader anticompetitive scheme from 2008–2018 . . . the technological changes Apple made to iOS and its new iPhone devices caused regular problems" for Plaintiff and others); *id*. ¶ 75 (Apple introduced entitlements and code signing in 2008).

Plaintiff's allegations fail to establish a continuing violation both because Plaintiff has failed to allege a new overt act, and because Plaintiff has failed to allege an incremental injury. ***First***, the FAC does not allege any ***facts*** to the effect that Apple did something new or different within the four-year statute of limitations period from when Plaintiff filed this lawsuit. Plaintiff makes the conclusory claim that Apple "began ramping up its aggressive campaign of technological revisions to iOS and new models of iPhones" within the limitations period by making "[i]ts debilitating revisions more frequent," FAC ¶ 6, including adding unstated "technical restrictions" in "2018 and 2019," *id*. ¶ 76. But the FAC never identifies any specific changes within the limitations period that allegedly hampered Plaintiff's rogue internet-based store catering only to jailbroken phones—including any

description of the alleged straw that "broke the proverbial camel's back" and led Plaintiff to finally file its lawsuit more than a decade after Apple implemented the challenged design decisions on iOS devices. *See id*. ¶ 6. Plaintiff's failure to identify what specifically changed is especially glaring because these facts should be readily available to Plaintiff. The absence of these details in the FAC thus belies Plaintiff's assertion that it experienced and was harmed by some "new and different" conduct by Apple within the limitations period.

Likewise, while the FAC alleges that Apple's contracts with consumers and developers "have not stayed static over the years," *id*. ¶ 32, it does not identify a single specific change to Apple's contractual terms within the limitations period that were different in character to Apple's 2008/2009 design decisions, or how any such contract modification impacted Plaintiff's ability to operate illicitly on iOS devices. Given the public nature of these agreements, Plaintiff should have been able to point any such changes had they actually occurred.

Plaintiff lists various technologies as related to Apple's alleged "policing" conduct, but does not actually allege that Apple introduced any of them within the limitations period. *Id*. ¶ 76. Plaintiff instead alleges that "Apple's 2018 and 2019 technical restrictions ***included***" them. *Id*. ¶ 76 (emphasis added). Plaintiff does not actually allege anywhere in the FAC whether any of these technologies were introduced after December 2016 (or which ones, if any), and this dooms Plaintiff's theory in view of the Court's prior admonition. *See In re Animation Workers Antitrust Litig*., 87 F. Supp. 3d 1195, 1212 (N.D. Cal. 2015) (dismissing claims as time-barred where there was a "conspicuous absence of specific dates" for the plaintiff's allegations).

Moreover, these security implementations are merely reaffirmations of Apple's 2008 design for iOS with the Apple App Store as the sole source of native iOS app distribution. FAC ¶ 41. Plaintiff admits that Apple has, since 2008, designed iOS to not permit installation of software from third-party app stores, *id*. ¶ 45, and that Apple integrated that design decision into its software, including by introducing in 2008 entitlements and code signing, *id*. ¶ 75. That Apple further developed technologies that implement this same consistent design is simply a reaffirmation that is insufficient to revive the statute of limitations. *See MedioStream, Inc. v. Microsoft Corp*., 869 F. Supp. 2d 1095 (N.D. Cal. 2012) (holding that a defendant's releases of software updates to an

allegedly anticompetitive operating system design were mere reaffirmations and did not revive the statute of limitations); *Garrison v. Oracle*, 159 F. Supp. 3d at 1071–72.

Apple's protections against security exploits are analogous to the facts of *Hawthorne Hangar*, 2021 WL 3264420, where the court held that claims under sections 1 and 2 of the Sherman Act were "barred by the statute of limitations" "as a matter of law." *Id*. at * 5.  There, a hangar operations company asserted that an airport and another hangar operations company had conspired in 2009 to erect a fence that excluded the plaintiff from the market for aircraft fueling.  *Id*. at *1–2.  The plaintiffs argued that the claims were timely under the continuing violation doctrine because the defendants had within the limitations period replaced the original "chain link" fence with a new security fence.  *Id*. at *4–5.  The court rejected this theory, concluding that replacing the fence "was not a new and independent act, but was rather a reaffirmation of a previous act."  *Id*. at *5.  The same is true for Plaintiff's allegations here:  Apple's upgrading the proverbial "security fences" in its software is merely a reaffirmation of the original design and implementation of iOS to exclude Plaintiff's store and all other third-party app stores.  A contrary rule would create a peculiar and unacceptable result:  it would suggest, for example, that if the hangar operations company had illicitly cut a hole in the fence, the airport's repairing or upgrading of the fence would somehow revive the statute of limitations.

These new allegations are not sufficient to invoke the continuing violation doctrine for the additional reason that Plaintiff fails to allege that Apple's alleged conduct vis-à-vis jailbreaking concerns the product markets alleged in the FAC.  Plaintiff alleges markets in iOS app distribution and iOS app payment processing.  Concordantly, Plaintiff seeks relief concerning Apple's policies in those markets:  Apple's alleged exclusion of Plaintiff's app store on iOS (conduct in the alleged iOS app distribution market) and Apple's alleged requirement of IAP for digital apps on iOS (conduct in the alleged iOS payment market).  But Plaintiff fails to allege software distributed solely to jailbroken devices from repositories on the internet competes with iOS apps sold on the App Store.  Thus, Plaintiff's allegations about Apple combatting illicit internet-based activities are entirely irrelevant to the instant inquiry, which is focused on Apple's policies on iOS.  Apple's enforcement activities—to police and neutralize bad actors, operating from random websites on the open web,

who are trying to circumvent and break Apple's security measures meant to protect iOS—are not at issue in this case nor does Plaintiff's claimed relief have anything to do with such conduct.

**Second**, the FAC fails to plead a new and accumulating injury to Plaintiff.  Plaintiff pleads in conclusory fashion that Apple's more recent conduct "led to effectively complete exclusion" of Plaintiff's app store from iOS.  *See* FAC ¶ 75 (which also acknowledges that Apple's recent alleged conduct was akin to the "practice that first began in 2008 and occurred every six to nine months").  But Plaintiff does not expressly allege any ***change in Apple's conduct within the limitations period*** that was the reason it stopped operating, nor could Plaintiff make such an allegation consistent with its obligations under Federal Rule of Civil Procedure 11.[4]  *See* FAC ¶ 46 (alleging that Apple's conduct outside the limitations period had already caused Plaintiff to operate "in hampered form").

Because Plaintiff's new allegations are insufficient to establish either prong of the continuing violation doctrine, they fail to save Plaintiff's stale claim.[5]

### D.    Plaintiff's Claims For Injunctive Relief Are Barred By Plaintiff's Unreasonable Delay.

As with its damages claims, Plaintiff's claims for equitable relief are untimely and should be dismissed.  The doctrine of laches bars claims seeking equitable relief where the claimant has unreasonably delayed in bringing suit and the defendant has been prejudiced.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950–51 (9th Cir. 2001).  "[T]he four-year statute of limitations in 15 U.S.C. § 15b furnishes a guideline for computation of the laches period" for antitrust claims.  *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 991 (N.D. Cal. 2020).  "The bare fact of delay creates a rebuttable presumption of prejudice."  *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975).  The equities here could not be more one-sided.

---

[4]  SaurikIT itself explained that the Cydia Store shut down because of the discovery of a security vulnerability in its payment processing system.  *See* https://www.theverge.com/2018/12/16/18143422/cydia-disables-in-app-purchases-ios-jailbreak-store-apple-iphone; https://www.reddit.com/r/jailbreak/comments/a5wfq9/news_andrew_wiik_recommend_that_everyone_removes/.

[5]  On the merits, Plaintiff's antitrust theory is doomed by its improper market definition as well as at least the additional reason that eliminating security vulnerabilities is a genuine product improvement that "does not violate Section 2, even if it is performed by a monopolist and harms competitors as a result."  *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 999 (9th Cir. 2010).

Plaintiff's delay in bring suit is unreasonable.  Apple's alleged conduct is no recent discovery by Plaintiff:  Plaintiff has been aware of it—and, indeed, knowledgeable about it—for roughly 13 years, since at least 2009.  FAC ¶¶ 5.  As Plaintiff now acknowledges expressly, its business has depended from the get-go on distributing software to iOS devices by developing and disseminating exploits for circumventing the security protections in Apple's iOS software.  FAC ¶¶ 5, 24.  Plaintiff even alleges it litigated with Apple before the U.S. Copyright Office (in 2009) over whether Plaintiff's activities were illegal.  FAC ¶ 68.  Plaintiff knew by 2009 virtually all of the facts on which it premises its claims now.  Plaintiff has no excuse for this delay.  Nor should the Court credit Plaintiff's vague insinuations about some unstated "change" Apple implemented at some point between 2018 and 2020.  Any such change is "part and parcel" with Apple's decades-long efforts to address security exploits in its software.  *See Reveal Chat*, 471 F. Supp. 3d at 991 (dismissing under laches equitable claims that accrued in 2014).

Apple, on the other hand, faces prejudice from Plaintiff's delay in bringing its claims for equitable relief.  Plaintiff's equitable claims challenge design decisions at the heart of Apple's business and products, that Apple implemented more than 13 years ago, and that Apple has invested heavily in and built upon since that time.  Among other things, Apple has invested significant time, money, and resources in maintaining the security of its iOS software and infrastructure, and in protecting Apple, its customers, and its business partners from fraud, piracy, and malicious software.  Through that significant effort and investment, Apple has developed a valuable reputation in the market and among its customers for the safety, security, and privacy of its products.  *See The App Store turns 10* (July 5, 2018), https://www.apple.com/newsroom/2018/07/app-store-turns-10/ (last visited Jan. 21, 2022) (cited in FAC ¶ 26 n.15) ("Protecting user privacy is paramount in the Apple ecosystem, so from the beginning, Apple has taken great care in . . . thoughtfully curating a safe, trusted app marketplace to ensure the best experience possible for customers . . . .").  Had Plaintiff timely filed suit, a court could have adjudicated this frontal assault on the design of iOS before Apple undertook many of these efforts and incurred many of these costs.  But because Plaintiff has sat on its hands since 2009, Plaintiff's equitable claims are prejudicial to Apple.

1

**E.      Plaintiff Should Be Denied Leave to Amend Its Claims.**

2

          Because further amendment would be futile, leave to amend should be denied.  *Klamath-Lake*

3

*Pharma. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).  Plaintiff has

4

now had two chances to plead timely claims, including based on millions of pages of Apple

5

documents produced in discovery, and has failed to do so.  Plaintiff's time-barred claims cannot be

6

resuscitated through further amendment.  Plaintiff's FAC should be dismissed with prejudice.

7

                                                        **CONCLUSION**

8

          Plaintiff's claims are stale, the continuing violation doctrine does not apply, and the equities

9

weigh strongly against Plaintiff's claims.  The Court should grant Apple's motion to dismiss the FAC

10

with prejudice.

11

12

DATED:  February 2, 2022                          GIBSON, DUNN & CRUTCHER LLP

13

14

                                                  By:  ____*/s/ Jay P. Srinivasan*_____

15

                                                       Jay P. Srinivasan

16

                                                  *Attorneys for Defendant Apple Inc.*

17

18

19

20

21

22

23

24

25

26

27

28