**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SAURIKIT, LLC,**<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>**APPLE INC.,**<br><br>　　　　　　Defendant. | Case No.  4:20-cv-08733-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Dkt. No. 74 |

Plaintiff SaurikIT, LLC brings this complaint against defendant Apple, Inc. alleging violations of antitrust and state laws.  (Dkt. No. 72, First Amended Complaint, "FAC".)  Plaintiff asserts four counts: (1) violation of the Sherman Act Section 2, Monopolization under 15 U.S.C. § 2; (2) violation of the Sherman Act Section 2, Attempted Monopolization under 15 U.S.C. § 2; (3) violation of the Sherman Act Section 1, Unreasonable Restraint of Trade; and (4) violation of California's Unfair Competition Law ("UCL") under California Business & Professions Code § 17200 *et. seq.*

Pending before the Court is Apple's renewed motion to dismiss plaintiff's claims as either time barred or barred under the doctrine of laches.  After carefully considering the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** the motion.[1]

**I.    BACKGROUND**

The Court assumes the parties' familiarity with the factual background of this case and only cites such background to the extent it is necessary to its analysis in this order.

Plaintiff brings this lawsuit alleging violations of federal antitrust laws and California's unfair competition law based on Apple's operation of its App Store and in-app purchasing system.

---

[1] Plaintiff filed three administrative motions to file certain portions of documents under seal.  (*See* Dkt Nos. 71, 73, and 77.) The Court finds that the requests are narrowly tailored and relate to sensitive business information and thereby **GRANTS** the request to seal the highlighted text in those documents.

1  The complaint alleges that Apple has created a system where its App Store is the only app store
2  that is available for downloading and purchasing apps on the iPhone, and its in-app purchasing
3  system is the only system for payment processing. (FAC ¶ 5.) Plaintiff challenges this conduct as
4  anticompetitive and alleges that new injury occurs every time a new developer agrees to conduct
5  business with Apple, with the sale of every new iPhone, and every software update.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts. *See Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000.)

A motion to dismiss based on the running of a statute of limitations may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove [an exception applied]." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995). At the motion to dismiss stage, a complaint cannot be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id*. at 1207.

## III.   ANALYSIS

### A.   Antitrust Claims for Damages

Defendant argues that plaintiff's antitrust claims for damages are time barred. Federal antitrust claims for damages are subject to a four-year statute of limitations. *See* 15 U.S. Code § 15(b). Ordinarily, "a cause of action in antitrust accrues each time a plaintiff is injured by an act

United States District Court
Northern District of California

of the defendant and the statute of limitations runs from the commission of the act." *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014).

An exception to the four-year statutory time limit exists for continuing violations. To state a continuing violation, a plaintiff must allege that the defendant completed an overt act during the limitations period. *See Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014). To qualify as an "overt act", the act must be both: (1) a new and independent act that is not merely a reaffirmation of a previous act; and (2) the act must inflict new and accumulating injury to the plaintiff. *Id*. Accordingly, because plaintiff filed its complaint on December 10, 2020, plaintiff must allege "overt acts" that occurred on or after December 10, 2016. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997).

During the hearing on Apple's first motion to dismiss, the Court dismissed plaintiff's original complaint on the basis that the complaint, as alleged, was based on conduct from 2008 and 2009 and did not allege any new, overt acts relevant to plaintiff that could restart the statute of limitations period. (Hr'g Tr. (Jan. 5, 2022) ("Tr.") at 7:16-8:16; 9:7-9.) The Court granted plaintiff's request for leave to amend with the directive that the amended complaint shall include "overt act[s] relative to [plaintiff]" that occurred within the statute of limitations period. (Tr. at 7:16-18.)

Plaintiff followed the Court's directive in part. Plaintiff's amended complaint alleges that Apple engaged in what plaintiff argues to be "millions" of overt acts within the statute of limitations period. (*See e.g.*, FAC ¶ 83.) These acts generally fall in three categories: (1) technological updates, (2) tying agreements by way of Apple's warranty contracts, and (3) tying and/or exclusive dealing by requiring developers to agree to Apple's Developer Agreement. (*See generally* FAC). According to plaintiffs, these acts are relevant to plaintiff because they "steer" plaintiff's potential customers away from using Cydia. (FAC ¶ 29.) With the exception of the technological updates, the amended complaint fails to allege sufficiently how the alleged acts within the statutory period differ from what Apple is alleged to have done starting in 2008 and 2009, and therefore fails to explain how those acts are not mere reaffirmations of Apple's "seminal decision[s] in 2008 and 2009." (Tr. at 34:4-8.)

3

With respect to Apple's technological updates, plaintiff alleges that Apple implemented new technological designs between 2018 and 2021 which made it such that no iOS app distributor, including Cydia, could provide an app that was usable on iOS devices. (FAC ¶ 46.)[2] The complaint alleges that the technological updates were more aggressive and pervasive than the technological updates that Apple implemented between 2008 and 2018 and that such updates made it impossible for Cydia to continue to operate its business. (FAC ¶¶ 5-6, 46, 75-76.) Under plaintiff's theory of the case, while Apple made the decision to release intermittent updates starting in 2008 to keep other app distributors off the App Store, the complaint alleges that Apple's updates between 2018 and 2019 "completely wiped out Cydia's ability to serve its users (as opposed to pre-2018 attempts that only temporarily excluded Cydia's and served more to hinders its competitiveness than eliminate it entirely.") (FAC ¶¶ 46, 76.) The complaint references internal Apple documents to support plaintiff's position. (*See* FAC ¶ 76.)

More specifically, the FAC also alleges the nature of these updates, namely that Apple's 2018 and 2019 technological restrictions included the inclusion of "runtime code modification prevention, pointer authentication, physical map codesigning, memory tagging extensions, and other control mechanisms" which "specifically target[ed] and prevent[ed] Cydia" from competing with Apple. (FAC ¶ 76.) The 2018 changes allegedly foreclosed competition on iPhones produced September 2018 and afterwards, while the 2019 changes allegedly made it so that Cydia, for the first time, could no longer operate on pre-2018 iPhones. (FAC ¶ 76.) Within a year from this final exclusion, plaintiff brought this lawsuit. Thus, plaintiff has plausibly alleged that Apple engaged in changes in its technological updates, which occurred within the four years preceding the filing of the lawsuit. Accordingly, to the extent plaintiff's claims rely on Apple's technological updates to exclude Cydia from being able to operate altogether, those claims are timely.

---

[2] Apple's argument that plaintiff's allegations about the technological updates are insufficient to invoke the continuing violation doctrine because plaintiff did not allege that Apple's conduct concerns product markets in this case does not persuade. (Dkt. No. 74, Motion to Dismiss, ("Mot.") at 15-16.) Plaintiff alleges a market in iOS app distribution, (*See e.g.*, FAC ¶ 5), and the FAC alleges that "the design changes in iOS[] finally made it so no iOS app distributor (like Cydia) could actually provide an app that was even usable on iOS devices. (FAC ¶ 46.) Thus, plaintiff has sufficiently alleged a connection between the alleged market of iOS app distribution and the alleged technological updates.

4

1    As to the tying and/or exclusive dealing agreements category of allegations, plaintiff's
2    claims fail because plaintiff has not sufficiently pled that those alleged acts are "overt acts"
3    sufficient to restart the limitations period rather than mere reaffirmation of Apple's previous acts.
4    Plaintiff has not alleged that Apple's conduct with respect to the warranty contracts, Developer
5    Agreements, and other contractual enforcement has changed, nor how they have changed, within
6    the last four years. While the complaint generally alleges that Apple "updat[ed] its contracts
7    (including within the four years preceding the original complaint in this lawsuit) to include ever-
8    more restrictive requirements that shored up perceived 'holes' in app developers' ability to use
9    alternative iOS app distribution services," (FAC ¶ 5), plaintiff does not explain how the terms of
10   these contracts differed from the contracts outside the statutory period. What new contractual
11   requirements did Apple introduce into its contracts within the four years preceding this lawsuit?
12   The complaint lacks the factual allegations about the changes in the character of these preexisting
13   contracts necessary to render them a "new and independent act".

14   Instead, plaintiff relies on *Samsung Elec. Co., Ltd.*, 747 F.3d at 1203-1204 to argue that
15   imposing an anticompetitive contract with respect to new devices not covered under the initial
16   contract restarts the statutory limitation period. However, *Samsung* is distinguishable because
17   here, there is no alleged preexisting relationship between the parties like there was in *Samsung*. In
18   *Samsung*, the parties had a licensor-licensee relationship, and the previous license agreement did
19   not govern the plaintiff's new products. The Court does not read *Samsung* to stand for the broad
20   proposition that imposition of a contract on a third-party's new product is sufficient to restart the
21   statutory clock on the claims of a non-party to the contract.

22   Additionally, plaintiff's argument that every time Apple sales a product to some third party
23   or operate its business on a daily basis restarts the statute of limitations period is not supported by
24   the case law and it effectively swallows the statute of limitations rule. Plaintiff's reliance on
25   *Hennegan v. Pacifico Creative Serv.*, Inc., 787 F.2d 1299 (9th Cir. 1986) does not change that
26   result. In *Hennegan*, the court found that a pre-limitations contract between five tour operators and
27   two competing gift shops that shepherded tourists to the shops of the souvenir vendors and away
28   from plaintiffs' shops in exchange for money was a continuing violation of the antitrust laws.

5

*Hennegan*, 787 F.2d at 1300-01. In *Hennegan*, the defendants were actually shepherding plaintiff's customers away from plaintiff's shop. Here, plaintiff pleads not facts to support the plausible conclusion that Apple steers plaintiff's customers away. The FAC does not allege if, and how, customers have in fact been steered away from Cydia. Without such information, plaintiff's reliance on *Hennegan* is misplaced.

Accordingly, the motion is **DENIED** with respect Apple's alleged technological updates and **GRANTED** with respect to Apple's contractual agreements.

### B. Doctrine of Laches for Antitrust Claims for Injunctive Relief

Apple argues that plaintiff's claim for injunctive relief is untimely. The deadline for suits for equitable relief for antitrust causes of action is governed by laches, and the Ninth Circuit construes the four-year statute of limitations in 15 U.S.C. § 15(b) as a guideline for computation of the laches period. *Samsung Elecs. Co.*, 747 F.3d at 1205. "Therefore, in applying laches, [the Ninth Circuit] look[s] to the same legal rules that animate the four-year statute of limitations." *Oliver*, 751 F.3d at 1086.

Given the Court's previous finding that plaintiff has alleged some injury with respect to Apple's recent changes in its technological updates, the Court finds that laches does not bar plaintiff's claim for injunctive relief. Accordingly, the motion is **DENIED** to the extent it relies on Apple's technological updates within the statutory period.

### C. Statute of Limitations for UCL Claim

Similarly, Apple argues that plaintiff's claims under both the "unlawful" and "unfair prongs" of the UCL are also untimely. Claims brought pursuant to the UCL are subject to a four-year statutes of limitations period. Cal. Bus. & Prof. Code § 17208. Given the Court's finding that plaintiff has alleged injury within the statute of limitations period, the motion on this ground is also **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Apple's motion to dismiss plaintiff's amended complaint. Apple shall respond to plaintiff's amended complaint within twenty-one (21) days from the date of this Order. The Court **SETS** a Case

1   Management Conference for **MONDAY, JULY 11, 2022 AT 2:00 PM**.

2   This Order terminates Docket Number 71, 73, 74 and 77.

3   **IT IS SO ORDERED.**

4   Dated: May 26, 2022

                                                                                             **YVONNE GONZALEZ ROGERS**
                                                                                             **UNITED STATES DISTRICT JUDGE**