1   QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
2   Stephen A. Swedlow (*pro hac vice*)
    stephenswedlow@quinnemanuel.com
3   David A. Nelson (*pro hac vice*)
    davenelson@quinnemanuel.com
4   Marc L. Kaplan (*pro hac vice*)
    marckaplan@quinnemanuel.com
5   191 N. Wacker Dr., Suite 2700
    Chicago, IL 60606
6   Telephone:  (312) 705-7400
    Facsimile:  (312) 705-7401
7
    Adam Wolfson (SBN 262125)
8   adamwolfson@quinnemanuel.com
    Joseph Sarles (SBN 254750)
9   josephsarles@quinnemanuel.com
    865 S. Figueroa Street, 10th Floor
10  Los Angeles, CA 90017
    Telephone:  (213) 443-3000
11  Facsimile:  (213) 443-3100
12  *Attorneys for Plaintiff SaurikIT, LLC*

13

14

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                          OAKLAND DIVISION

18  SAURIKIT, LLC,

19              Plaintiff,                      No. 20-cv-08733-YGR
                                                Related Case
20        v.
                                                **PLAINTIFF SAURIKIT, LLC'S**
21  APPLE INC.,                                 **NOTICE OF MOTION AND**
                                                **MOTION FOR CLARIFICATION**
22              Defendant.                      **AND/OR FOR LEAVE TO SEEK**
                                                **RECONSIDERATION**

23                                              Date:       July 19, 2022
                                                Time:       2:00 pm
24                                              Courtroom:  1, 4th Floor
                                                Judge: Hon. Yvonne Gonzalez Rogers
25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ............................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.     MOTION FOR CLARIFICATION ..................................................................... 4

II.    IN THE ALTERNATIVE, MOTION FOR LEAVE TO SEEK
       RECONSIDERATION OF THE COURT'S DISMISSAL ORDER................................. 5

       A.    The Court Did Not Address Cydia's Allegations That Apple Enforced
             Tying and Exclusive Dealing Agreements During the Limitations Period,
             Acts That Binding Case Law Holds Are New Overt Acts ........................................ 5

       B.    Contrary to Binding Precedent, the Court Held That Cydia Must Allege
             New Types of Overt Acts Rather Than Simply New Examples of Overt
             Acts ............................................................................................................. 6

       C.    The Court Erroneously Held That Tying and Exclusive Dealing Agreements
             Are Not Legally Examples of Steering Customers Away From All Rival
             App Stores (Including But Not Limited to Cydia) .................................................. 8

       D.    The Court Read Requirements Into *Samsung* That Contradict its Core
             Holding and the Precedent it Cites For That Holding ........................................... 11

III.   IF THE COURT DENIES THIS MOTION IN FULL, CYDIA REQUESTS
       INTERLOCUTORY APPEAL CERTIFICATION UNDER 28 U.S.C. § 1292(b)............ 12

IV.    CONCLUSION ............................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Airweld, Inc. v. Airco, Inc.*,
  742 F.2d 1184 (1984) ................................................................. 6, 8

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*,
  592 F.3d 991 (2010) ..................................................................... 10

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996) ....................................................... 8

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ...................................................................... 11

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) ......................................................... 9

*City of Anaheim v. S. California Edison Co.*,
  955 F.2d 1373 (9th Cir. 1992) ....................................................... 4

*CollegeNet, Inc. v. Common Application, Inc.*,
  355 F. Supp. 3d 926 (D. Or. 2018) .............................................. 15

*Columbia Steel Casting Co., Inc. v. Portland Gen. Elec. Co.*,
  111 F.3d 1427 (9th Cir. 1996) ....................................................... 6

*Complete Entm't Res. LLC v. Live Nation Entm't, Inc.*,
  (C.D. Cal. Oct. 16, 2017) ............................................................. 10

*Datagate, Inc. v. Hewlett-Packard Co.*,
  60 F.3d 1421 (1995) ................................................................. 9, 10

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992) ................................................................. 9, 11

*Eichman v. Fotomat*,
  880 F.2d 149 (9th Cir. 1989) ......................................................... 6

*Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*,
  95 F.R.D. 398 (S.D.N.Y. 1982) .................................................... 4

*Epic Games, Inc. v. Apple Inc.*,
  559 F. Supp. 3d 898 (N.D. Cal. 2021) ................... 2, 4, 5, 9, 10, 14, 15

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
  392 U.S. 481 (1968) ............................................... 2, 3, 7, 9, 15

*Hennegan v. Pacifico Creative Serv., Inc.*,
  787 F.2d 1299 (9th Cir. 1986) ....................... 3, 7, 8, 10, 12

*Hoopes v. Union Oil Co.*,
   374 F.2d 480 (9th Cir. 1967) .................................................................................... 6

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
   22 F.4th 1125 (9th Cir. 2022) ................................................................................. 13

*In re Glumetza Antitrust Litig.*,
   336 F.R.D. 468 (N.D. Cal. 2020) .............................................................................. 4

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   933 F.3d 1136 (9th Cir. 2019) ............................................................................. 4, 11

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) ....................................................................................................... 9

*MetroNet Services v. Qwest*,
   383 F.3d 1124 (9th Cir. 2004) ................................................................................. 12

*Oliver v. SD-3C LLC*,
   751 F.3d 1081 (9th Cir. 2014) ................................................................................... 8

*Pace Indus., Inc. v. Three Phoenix Co.*,
   813 F.2d 234 (9th Cir. 1987) ............................................................................... 6, 12

*Patt v. Antech Diagnostics, Inc.*,
   2020 WL 5076970 (C.D. Cal. May 18, 2020) ......................................................... 15

*Power Analytics Corp. v. Operation Tech., Inc.*,
   2017 WL 5479638 (C.D. Cal. May 10, 2017) ......................................................... 11

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ................................................................................... 13

*Samsung Elecs. Co. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014) ................................................................ 3, 6, 7, 11, 12

*Su v. Siemens Indus., Inc.*,
   2014 WL 2600539 (N.D. Cal. June 10, 2014) ......................................................... 13

*US Airways, Inc. v. Sabre Holdings Corp.*,
   938 F.3d 43 (2019) ..................................................................................................... 8

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
   395 U.S. 100 (1969) ............................................................................................. 4, 12

### Statutory Authorities

28 U.S.C. § 1292(b) ....................................................................................... 12, 13

### Rules and Regulations

Local Rule 7-9 ........................................................................................................... 1

Local Rule 7-9(b)(3) ........................................................................................... 2, 3, 5

1

Local Rule 7-11 ................................................................................................................... 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 19, 2022, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, before the Honorable Yvonne Gonzalez Rogers, Plaintiff SaurikIT, LLC ("Plaintiff" or "Cydia") will and hereby does move this Court pursuant to Local Rule 7-11 and, in the alternative, Local Rule 7-9 for respectively an order (1) clarifying the implications on discovery and trial presentation of the Court's recent Order Granting in Part and Denying in Part Motion to Dismiss First Amended Complaint (Dkt. 80) (the "Order"), and (2) in the alternative, for leave to seek reconsideration of that part of the order granting Apple's motion to dismiss. This motion is based on the Complaint in this action, this Notice of Motion, the Memorandum of Points and Authorities filed herewith, all matters with respect to which this Court may take judicial notice and such oral and documentary evidence as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Cydia may seek discovery of and, at trial, introduce evidence of Apple's historical and current practice of imposing contractual and other coercive restraints on Cydia's potential developer and consumer customers in order to prevent them from using Cydia or any other rival app store, even if the Court has determined that such acts are not new "overt acts" for the purposes of the statute of limitations.

2.      In the alternative, whether the Court manifestly failed to consider material facts or dispositive legal arguments from Cydia's First Amended Complaint and opposition to Apple's motion to dismiss explaining why, under binding Supreme Court and Ninth Circuit law, Cydia's allegations of Apple's tying and exclusive dealing practices constitute new overt acts leading to new and continuing violations of the Sherman Act through the present.

## MEMORANDUM OF POINTS AND AUTHORITIES

By this motion, Cydia seeks the Court's clarification on the intended scope and implications of the recent Order, so the parties can approach discovery with a clear understanding and eliminate anticipated discovery disputes. Cydia's understanding is that evidence of Apple's non-technological restraints on Cydia's app store customers (*i.e.*, both iOS app developers and iPhone users) remains

1    relevant and, on a proper showing at trial, will be admissible because those acts are part of the

2    broader scheme Cydia alleges. Binding precedent from the Supreme Court and Ninth Circuit holds

3    that even if acts are not "overt acts" for purposes of the statute of limitations, they may still be proof

4    of a broader anticompetitive scheme. The Court addressed similar issues in the *Epic Games* case

5    and should allow those same categories of evidence here.

6        If the Court's Order means Cydia can**not** seek discovery of nor seek to introduce such

7    evidence at trial, then Cydia respectfully moves for leave to seek reconsideration of that portion of

8    the Order granting Apple's motion to dismiss. Although Cydia appreciates that the Court has already

9    invested time and resources into this issue, given the previous briefing, oral argument, and

10   subsequent orders, this issue significantly impacts the viability of Cydia's claim at trial (in addition

11   to the scope of discovery leading to trial). Cydia therefore alternatively seeks leave to move for

12   reconsideration under Local Rule 7-9(b)(3) for the following reasons.

13       *First*, in the Order, the Court did not consider or address Cydia's allegations that Apple

14   enforced tying and/or exclusive dealing agreements during the limitations period to exclude all rival

15   app stores, including Cydia. *Compare* Dkt. 72 ("FAC") ¶¶ 5-6, 29, 33, 45, 57, 70-73, 83; *with*

16   *generally* Order. As Cydia noted in its opposition to Apple's motion to dismiss, binding Ninth

17   Circuit precedent holds that enforcing such agreements during the limitations period constitutes a

18   new overt act, even if the defendant imposed them more than four years earlier.

19       *Second*, the Court held (at 5) that Cydia must allege that Apple's anticompetitive contracts

20   or contractual enforcement practices changed in some way within the four years preceding the

21   lawsuit. But, that is contrary to binding precedent. The controlling case on this issue is *Hanover*

22   *Shoe*, which addressed a **43-year** period in which the defendant imposed the exact same types of

23   anticompetitive contracts on the industry. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392

24   U.S. 481, 502 n.15 (1968) (cited in Dkt. 76 ("MTD Opp."), at 17). Despite that lengthy period, the

25   alleged monopolist was still subject to a timely antitrust damages claim for each new anticompetitive

26   contract it imposed because there need only be new overt *acts* causing additional injury—not new

27   *types* of acts. To the extent this Court's holding is contrary to *Hanover Shoe*, it would eviscerate the

28   meaning of a "continuing violation" and be subject to reversal on appeal.

1    *Third*, the Court held (at 5-6) that, unlike in *Hennegan*, Cydia did not allege any facts

2    supporting the plausible conclusion that Apple steered plaintiff's customers away from it within the

3    limitations period. This is incorrect as a matter of law because tying agreements are, by their nature,

4    instances where a monopolist coerces a customer not to use rivals' products, thereby harming

5    competition and those rivals. Similarly, as a matter of law, an exclusive dealing arrangement steers

6    customers away from rivals like Cydia by getting them to contractually to agree to use only the

7    monopolist's product or service, thereby foreclosing competition. The Court's conclusion that

8    millions of such agreements within the limitations period identified by Plaintiffs are legally

9    insufficient to constitute overt acts therefore constitutes clear legal error because it manifestly fails

10   to acknowledge the existence and necessary legal inferences of Cydia's unchallenged allegations to

11   that effect.

12   *Fourth*, the Court distinguished *Samsung*'s holding from this case (at 5) on the basis that

13   there was no preexisting relationship between the parties—an argument Apple did not make, but

14   which it also could not make because the court in *Samsung* did not hold that the parties' preexisting

15   relationship is what restarted the statute of limitations. What restarted the statute of limitations in

16   *Samsung* was the fact that the defendants imposed an anticompetitive contract that harmed the

17   plaintiff, just as Cydia alleges here with respect to Apple's tying and exclusive dealing practices.

18   *See generally Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1203-1205 (9th Cir. 2014).

19   *Hanover Shoe* turned on the same allegation: anticompetitive contracts that harmed competition and

20   the plaintiff directly restarted the statute of limitations. 392 U.S. at 502 n.15. Furthermore, a

21   preexisting relationship between the parties is only an element of a unilateral refusal to deal claim.

22   Cydia does not allege a unilateral refusal to deal claim, and such a claim was not at issue in *Samsung*

23   either. *See Samsung*, 747 F.3d at 1202 & 1202 n.2 (nature of claim was defendants' conspiracy to

24   pool patents so that they could impose anticompetitive contracts on competitors and control prices

25   in markets for SD memory cards).

26   For these reasons, Cydia respectfully believes that the Court "manifest[ly] fail[ed] … to

27   consider materials facts or dispositive legal arguments which were presented to the Court before

28   [the Order]." LR 7-9(b)(3). Cydia does not seek leave for reconsideration lightly; however, Cydia

3

SAURIKIT, LLC'S MOTION FOR CLARIFICATION AND/OR FOR LEAVE TO SEEK RECONSIDERATION
Case No. 20-cv-08733-YGR

1  strongly believes that its allegations and the binding precedent on these issues requires the Court to

2  reexamine its Order, so the parties do not engage in years of expensive litigation unnecessarily.

3  **I.      MOTION FOR CLARIFICATION**

4         Under Supreme Court and Ninth Circuit precedent, an antitrust scheme must be analyzed in

5  its entirety, looking at all of the different acts and restraints a defendant placed on the market to

6  determine the harm to competition and the plaintiff's personal injury flowing from that competitive

7  harm. *See*, *e.g.*, *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 118-119 (1969)

8  (analyzing antitrust damages claim based on effects from the entirety of anticompetitive scheme,

9  rather than just the acts within the limitations period); *In re Nat'l Football League's Sunday Ticket*

10  *Antitrust Litig.*, 933 F.3d 1136, 1152 (9th Cir. 2019) (noting antitrust claim must be assessed based

11  on the totality of the alleged restraints); *see also City of Anaheim v. S. California Edison Co.*, 955

12  F.2d 1373, 1376 (9th Cir. 1992) ("[I]t would not be proper to focus on specific individual acts of an

13  accused monopolist while refusing to consider their overall combined effect…. We are not dealing

14  with a mathematical equation. We are dealing with what has been called the 'synergistic effect' of

15  the mixture of the elements.").

16         In the case of damages claims brought more than four years after the scheme began, the pre-

17  limitations acts remain relevant to proving the anticompetitive scheme, both because the but-for

18  world extends back to the beginning of the scheme and because such acts are typically relevant to

19  other elements of certain antitrust claims, such as the intent to monopolize element of an attempted

20  monopolization claim (like the one Cydia brings here). *See*, *e.g.*, *Zenith Radio*, 395 U.S. at 118-119;

21  *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 479-480 (N.D. Cal. 2020) (analyzing antitrust

22  damages model based on but-for world in which defendants never engaged in anticompetitive

23  restraints, although damages were limited to just the four years preceding the lawsuit); *see also*

24  *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 95 F.R.D. 398, 399 (S.D.N.Y. 1982)

25  ("discovery in antitrust cases routinely goes beyond the statutory period, and plaintiff is permitted

26  to discover defendant's activities for a reasonable period of time antedating the earliest possible date

27  of the actionable wrong") (internal quotations and citations omitted). Indeed, this Court applied

28  exactly that sort of but-for analysis in its trial verdict in the *Epic Games* case. *See Epic Games, Inc.*

4

*v. Apple Inc.*, 559 F. Supp. 3d 898, 998-999 (N.D. Cal. 2021) (analyzing output in the but-for world from 2008 forward, because that is the period in which Apple first implemented its alleged anticompetitive restraints).

Given this law, Cydia interprets the Court's Order to hold that Apple's tying and exclusive dealing do not constitute new overt acts for the purposes of the statute of limitations, but that such evidence remains relevant given the alleged scope of the anticompetitive scheme at the heart of this dispute. Apple does not agree with that understanding, instead stating that it will wait to assess further down the road, in response to discovery requests. Due to the ambiguity over the proper interpretation of the Court's order, Cydia therefore seeks clarity on this issue.

Cydia believes that its interpretation is fully consistent with the law and that a contrary position would ask this Court to violate binding precedent. Therefore, Cydia requests the Court to clarify that Apple's anticompetitive agreements may be relevant to, *inter alia*, Apple's anticompetitive scheme and its intent to monopolize, even if Cydia may not use those agreements to establish the timeliness of its claims. A ruling on this issue will guide the parties' discovery efforts and allow them to accurately craft their respective cases for trial.

## II.   IN THE ALTERNATIVE, MOTION FOR LEAVE TO SEEK RECONSIDERATION OF THE COURT'S DISMISSAL ORDER

As noted above, if the Court's view is that Cydia cannot introduce evidence of Apple's non-technological restraints, then Cydia believes for the reasons set forth below that it is appropriate to seek leave to move for reconsideration under Local Rule 7-9(b)(3). Cydia seeks this relief in the alternative to a clarification that such evidence remains relevant.

### A.   The Court Did Not Address Cydia's Allegations That Apple Enforced Tying and Exclusive Dealing Agreements During the Limitations Period, Acts That Binding Case Law Holds Are New Overt Acts

In the FAC and its opposition brief, Cydia alleged and noted that Apple routinely enforced its anticompetitive agreements with developers and iPhone users throughout the limitations period, the effect of which was to harm competition for rival app store providers like Cydia and, through that competitive harm, to personally harm Cydia by depriving it of a customer base. *See* FAC ¶¶ 5-6, 29, 33, 45, 57, 70-73, 83; *and* MTD Opp. at 1, 9-10, 12, 15-16. Nevertheless, the Court did not

1   address these allegations in its Order and instead found that Cydia did not plausibly allege timely

2   overt acts besides Apple's technological restraints. *See generally* Order at 3-6.

3         This unfortunately is a "manifest failure by the Court to consider materials facts or

4   dispositive legal arguments which were presented to the Court before [the Order]" because, as Cydia

5   pointed out in both its FAC and dismissal opposition brief, binding Ninth Circuit case law holds that

6   enforcing such agreements within the limitations period constitutes new overt acts. *See* FAC ¶¶ 29,

7   57, 71; MTD Opp. at 1:25-28 (citing and quoting *Columbia Steel Casting Co., Inc. v. Portland Gen.*

8   *Elec. Co.*, 111 F.3d 1427 (9th Cir. 1996); *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237

9   (9th Cir. 1987); *Eichman v. Fotomat*, 880 F.2d 149, 160 (9th Cir. 1989)); *Hoopes v. Union Oil Co.*,

10  374 F.2d 480, 486 (9th Cir. 1967) (monopolist's efforts within limitations period to enforce pre-

11  limitations period exclusive dealing contracts restarted statute of limitations); *see also Samsung*,

12  747 F.3d at 1203-1204 (holding that efforts to enforce pre-limitations license by collecting royalty

13  payments was a new overt act restarting limitations period). Indeed, for tying claims, Ninth Circuit

14  law is clear that "[t]o restart the statute of limitations in a tying situation, [plaintiff] must show that

15  [defendant] had the ability [to] and actually did enforce the tie during the limitations period." *See*

16  *Eichman*, 880 F.2d at 160; *see also Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184 (1984) (in case

17  involving alleged tying agreement that predated the limitations period, "[plaintiff] was required to

18  show that [defendant] had the ability and actually did enforce the tie of acetylene to atmospheric

19  gases during the claims period"). As the Ninth Circuit subsequently reaffirmed more broadly, "an

20  action taken under a pre-limitations contract was sufficient to restart the statute of limitations so

21  long as the defendant had the ability not to take the challenged action, even if that would have

22  required breaching the allegedly anti-competitive contract." *Samsung*, 747 F.3d at 1203.

23        Given these unchallenged allegations and the binding case law stating that such acts

24  constitute new overt acts, Cydia therefore respectfully believes the Court manifestly failed to

25  consider or address these material facts and dispositive legal arguments.

26      **B.**    **Contrary to Binding Precedent, the Court Held That Cydia Must Allege New
    Types of Overt Acts Rather Than Simply New Examples of Overt Acts**

27

28        In the Order, the Court concluded that Cydia did not identify timely overt acts besides

6

SAURIKIT, LLC'S MOTION FOR CLARIFICATION AND/OR FOR LEAVE TO SEEK RECONSIDERATION
Case No. 20-cv-08733-YGR

Apple's 2018 and 2019 technological updates because "Plaintiff has not alleged that Apple's conduct with respect to the warranty contracts, Developer Agreements, and other contractual enforcement has changed, nor how they have changed, within the last four years." Order at 5. In so holding, however, the Court manifestly failed to consider dispositive, binding case law that a monopolist need not change the nature or type of their anticompetitive acts in order for each instance of those acts to quality as an overt acts for the purposes of the statute of limitations. Cydia presented such law to the Court in its dismissal opposition brief. *See* MTD Opp. at 11-12, 16-17, 19 n.8.

In *Hanover Shoe*, for example, the defendant engaged in a decades-long "lease-only policy" regarding its shoe-manufacturing machinery, whereby it would only lease the machinery to customers and refused to sell that machinery. The Supreme Court held that this practice of imposing anticompetitive leases throughout the industry constituted an ongoing act of monopolization and held that the statute of limitations began anew each time the defendant refused to sell and would only lease to its customers. *See Hanover Shoe*, 392 U.S. at 502 n.15. The plaintiff was entitled to recover damages incurred during the four years prior to suit, even though it was first subjected to the policy **43** years earlier, because each new instance where the defendant insisted on an anticompetitive lease caused new and accumulating harm and was part of the decades-long continuing violation. *Id.*

Similarly, in *Samsung*, when the Ninth Circuit held that a 2006 license between the parties was a new overt act, it did not base its holding on any changes between that and a previous license agreement; it focused on the new harm the 2006 license caused. *Samsung*, 747 F.3d at 1204. The Ninth Circuit was clear it would have held the same "even if the 2006 license was merely a restatement of the 2003 license." *Id.* As the court noted then, "[the continuing violation] standard is meant to ***differentiate those cases where a continuing violation is ongoing—and an antitrust suit can therefore be maintained—from those where all of the harm occurred at the time of the initial violation***." *Id.* at 1202 (emphasis added). Acts can be of the exact same type and character if they inflict new and accumulating antitrust injury on the plaintiff each time. *Id.* As the Court noted in the Order (at 4), Cydia's harm was not complete until shortly before it filed its complaint.

*Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986), is also a

quintessential example of this case law in practice. There, the defendants agreed to allocate a market between them and agreed that they would, *inter alia*, steer customers away from their competitors. *Id.* at 1300-1301. The defendants then did so for 18 years, all the while harming competition and their competitors with the exact same types of act: customer steering. *Id.* The Ninth Circuit held that each such act—even though it was of the exact same type as occurred for nearly two decades—constituted a new overt act that restarted the statute of limitations. *Id.*

Given that Cydia cited and discussed these and other similar cases extensively in its opposition brief, the Court manifestly failed to consider such dispositive legal arguments when it held that a plaintiff must allege a change in the type of anticompetitive behavior rather than simply the existence of new acts that continue to harm competition and, through that harm to competition, the plaintiff. *See supra*; *see also Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) ("each time a plaintiff is *injured* by an act of the defendant[,] *a cause of action accrues* to him to recover the damages caused by that act.") (emphases added); *cf. also Amarel v. Connell*, 102 F.3d 1494, 1509–10 (9th Cir. 1996) (antitrust standing is appropriate for "a supplier of goods or services who can prove that he suffered lower selling prices or diminished volume or other profit reduction as a result of illegal conduct by the defendant(s)") (quoting Areeda and Hovenkamp, Antitrust Law at ¶ 375a).

### C. The Court Erroneously Held That Tying and Exclusive Dealing Agreements Are Not Legally Examples of Steering Customers Away From All Rival App Stores (Including But Not Limited to Cydia)

In its opening and reply briefs, Apple did not once try to argue that tying or exclusive dealing agreements are anything but examples of a monopolist harming competition by steering customers away from its rivals. In Apple's opening brief, it mentioned tying just once (Dkt. 74 at 11:6), and it mentioned tying only twice in its reply brief (Dkt. 78 at 10:23, 12:7). In neither instance did Apple argue that if a plaintiff plausibly alleges a defendant imposed tying agreements, such agreements are not new overt acts. *Id.* As for exclusive dealing, Apple did not once mention or address that concept anywhere in its briefs, meaning Apple provided no authority or argument contesting the clear authority that each such agreement is a new overt act. *See* MTD Opp. at 1, 9-10; *see also Airweld*, 742 F.2d at 1189-1190 (tying cause of action "first accrued" when defendant originally

imposed tying agreement); *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 67 (2019) (noting the "'continuing violation' rule from *Hanover Shoe*…provides that ***the statute of limitations does not only run from a defendant's initial act—for example, the execution of an anticompetitive contract***—if the defendant engages in 'conduct which constitute[s] a continuing violation of the Sherman Act and which inflict[s] continuing and accumulating harm.'") (emphasis added).

Nevertheless, the Court held that, despite the unchallenged sufficiency of Cydia's allegations that Apple entered and imposed millions of such agreements within the limitations period (*see*, *e.g.*, FAC ¶¶ 5, 28-29, 32-33, 45, 57-59, 69-74, 80-83), "plaintiff pleads no facts to support the plausible conclusion that Apple steers plaintiff's customers away" from it. Order at 6. This manifestly ignores dispositive legal arguments that Cydia's allegations in fact identify countless examples of such overt acts, and constitutes clear legal error based on arguments that Apple did not raise.

As this Court previously held, for a tying claim, "a plaintiff must prove: (1) that the defendant tied together the sale of two distinct products or services; (2) that the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market." *Epic Games*, 559 F. Supp. 3d at 1045 (citing *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008), *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12-18 (1984), *and Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461-462 (1992)). "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product ***to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms***." *Epic Games*, 559 F. Supp. 3d at 1045 (quoting *Jefferson Parish*, 466 U.S. at 12, 104 S.Ct. 1551) (emphasis added). Put differently, as this Court noted, the fundamental harm to competition from a tying agreement is that, with such an agreement, the defendant monopolist forces purchasers of the tying product (here, the iPhone) to *not* use or purchase a competitor's version of the tied product (here, the App Store, Cydia's rival iOS app marketplace, and all other rival app stores). *Id.*; *see also Cascade Health*, 515 F.3d at 912-13 ("Tying arrangements are forbidden on the theory that, if the seller has market power over the tying product, the seller can leverage this market power through

9

tying arrangements to exclude other sellers of the tied product."); *cf. Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421 (1995) ("The harm from tying arrangements is the forced sale of the ***tied*** product") (emphasis in original).

Exclusive dealing arrangements similarly harm competition by depriving rivals of customers. *See Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991 (2010) ("Exclusive dealing involves an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor" and "foreclose competition in a substantial share of the line of commerce affected"). Such claims *cannot* arise unless and until the monopolist enters into the exclusive agreement with a rival's potential customers. *See Aerotec*, 836 F.3d at 1181 ("[A] prerequisite to any exclusive dealing claim is an agreement to deal exclusively"). Furthermore, they may be brought years after the exclusive dealing scheme first began—what matters is that the monopolist entered such anticompetitive agreements within the four years preceding the lawsuit. *See*, *e.g.*, *Complete Entm't Res. LLC v. Live Nation Entm't, Inc.*, 2017 WL 6512223 (C.D. Cal. Oct. 16, 2017) (denying summary judgment on exclusive dealing claim regarding exclusive dealing practices that extended back over two decades).

In the Order (at 6), the Court noted that "[i]n *Hennegan*, the defendants were actually shepherding plaintiff's customers away from plaintiff's shop." That is true. But, legally, there is no distinction between the competitive harms represented by small-scale physical shepherding of tourists away from souvenir shops on Guam and the much larger-scale contractual and economic coercion of iOS app developers and iPhone users represented by the tying and exclusive dealing Cydia alleges here—or, for that matter, preventing customers from using Cydia or other rival app stores via the technological updates the Court found do constitute new overt acts. In each instance, the competitive harm (and the antitrust injury flowing from that harm) is that a company was unable to compete on level ground because it was anticompetitively deprived of customers.

As this Court has noted, the very nature of tying is that the defendant forces consumers not to use its rivals' tied products. *Epic Games*, 559 F. Supp. 3d at 1045. Exclusive dealing effectuates the same type of competitive harm through a slightly different mechanism, and it is notable that Apple could not muster a single argument or case citation to the contrary for either type of legal

theory. Thus, by holding that Cydia fails to allege how Apple anticompetitively deprives it of customers through the tying and exclusive dealing agreements entered in the limitations period, the Court manifestly ignored dispositive legal arguments in Cydia's favor, requiring reconsideration. *See also Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1152 ("Contrary to the defendants' argument, we are required to take a holistic look at how the interlocking agreements actually impact competition.").

Finally, it would be legal error to maintain the Court's implication that Cydia fails to plausibly allege damage to itself from Apple's tying or exclusive dealing simply because Apple imposes those agreements on Cydia's iOS app developer and iPhone user customers. *See* Order at 6 ("The FAC does not allege if, and how, customers have in fact been steered away from Cydia."). Competitors who are restrained from entering the market for the tied product unquestionably have standing to pursue such claims, particularly where, as here, the defendant does not even argue the plaintiff fails to plausibly connect its personal harm to the market wide tying/exclusive dealing practices. *See*, *e.g.*, *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992) (competitor had standing to assert tying claim); *Power Analytics Corp. v. Operation Tech., Inc.*, 2017 WL 5479638, at *17 (C.D. Cal. May 10, 2017) (same, for exclusive dealing claim) (collecting precedent from multiple Courts of Appeal); *see also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 (1990) (antitrust standing rests on whether the plaintiff has been "adversely affected by an anticompetitive aspect of the defendant's conduct").

### D. The Court Read Requirements Into *Samsung* That Contradict its Core Holding and the Precedent it Cites For That Holding

The final reason the Court manifestly ignored dispositive legal arguments is because it held that *Samsung*'s overall teachings do not apply here because there was a direct relationship between the plaintiff and defendant in that case, and there is not one here. Order at 5. However, this distinction finds no basis in *Samsung* nor any other binding case law, and it is not an argument Apple made in the briefing. The Ninth Circuit's ruling that Samsung stated a timely damages claim did not hinge on the preexisting relationship between the parties; neither the word "preexisting" nor any similar concept appears anywhere in the opinion, and such a prior course of dealing would only be

relevant for a unilateral refusal to deal claim. *Compare generally Samsung*, 747 F.3d 1199; *with MetroNet Services v. Qwest*, 383 F.3d 1124, 1131 (9th Cir. 2004) (noting the "unilateral termination of a voluntary and profitable course of dealing" is one of the elements of a unilateral refusal to deal claim). Furthermore, the Ninth Circuit was clear in *Samsung* that the very first contract between the parties—*i.e.*, the very start of their relationship—was itself an overt act for the scheme in that case; just not a timely one for damages purposes. *Samsung*, 747 F.3d at 1203-1204.

As noted in Sections II.B and II.C above, applying new tying and exclusive dealing agreements to new *and* old customers—thereby depriving competitors of access to those customers—legally are new acts harming competition and affected competitors. In *Samsung*, the Ninth Circuit held the 2006 license was a new overt act because it continued to harm competition and, through that competitive harm, forced the plaintiff to overpay for an entirely new category of memory cards. *Samsung*, 747 F.3d at 1203-1204. For this broad proposition, the Ninth Circuit cited, among other cases, *Hennegan* because it is the *concept* of new and accumulating injury that matters, not the exact mechanism the defendant uses to harm competition (or whether that conduct changes in type over time). *See id.* at 1202-1204 (citing, *inter alia*, *Hennegan*, 787 F.2d 1299 (defendants conspired to deprive plaintiff and other competitors of customers); *Pace Indus.*, 813 F.2d at 236-238 (defendants acted to keep plaintiff-competitor out of the market)). By reading *Samsung*'s logic regarding anticompetitive contracts for new products to therefore apply only to antitrust cases involving direct relationships between the parties, the Court manifestly ignored dispositive legal arguments Cydia provided in the prior briefing, and such a holding, if left as is, would further contradict binding precedent that it is the harm to the plaintiff from new anticompetitive acts that matters, not the relationship between the parties. *See*, *e.g.*, *Zenith Radio*, 401 U.S. 321 (finding continuing violation based on defendant's patent pooling practices and enforcement of those agreements within the limitations period by, *inter alia*, suing plaintiff for patent infringement; *i.e.*, new antitrust injury despite no direct relationship between the parties).

**III.   IF THE COURT DENIES THIS MOTION IN FULL, CYDIA REQUESTS INTERLOCUTORY APPEAL CERTIFICATION UNDER 28 U.S.C. § 1292(b)**

Under 28 U.S.C. § 1292(b), the Court may certify for interlocutory appeal any order that it

believes "meets the three certification requirements outlined in § 1292(b)," including "(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion [as to that question], and (3) that an immediate [resolution of that question] may materially advance the ultimate termination of the litigation." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)).

"A controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *Id.* (internal quotation omitted). "The 'substantial grounds' prong is satisfied when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions.'" *Id.*(quoting *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). Although conflicting Court of Appeals precedent can satisfy this prong, "the district court need not 'await[ ] development of contradictory precedent' before concluding that the question presents a 'substantial ground for difference of opinion.'" *Id.* at 1130-1131 (quoting *Reese*, 643 F.3d at 688). Finally, the "materially advance" prong is satisfied when the resolution of the question "may appreciably shorten the time, effort, or expense of conducting" the district court proceedings. *Id.* at 1131. This includes if the appeal might eliminate claims entirely, *Reese*, 643 F.3d at 688, or if an appeal would greatly affect the scope of what is presented at trial and avoid subsequent reversal if the plaintiff was not permitted to present a number of different types of act in support of its case. *See*, *e.g.*, *Su v. Siemens Indus., Inc.*, 2014 WL 2600539, at *3 (N.D. Cal. June 10, 2014) (finding an interlocutory appeal appropriate because "it is also possible that even a judgment for Plaintiff would be impacted by the court's ruling on the scope of 'protected activity,' since many actions Complainant Anderson seeks to challenge would be cut out of the case"). "[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688.

Cydia believes a denial of this motion satisfies all three requirements.

*First*, the questions of law at issue in this motion—(1) whether a party may introduce evidence of a full anticompetitive scheme, even if not all of the acts are new overt acts for statute of

SAURIKIT, LLC'S MOTION FOR CLARIFICATION AND/OR FOR LEAVE TO SEEK RECONSIDERATION
Case No. 20-cv-08733-YGR

limitations purposes; and (2) whether the various limitations-period acts Cydia alleges without challenge as to their sufficiency legally constitute new overt acts—are hugely important in this case. If Cydia is only permitted to put evidence in front of the jury that Apple put technological restraints in place against rival app stores, but did not otherwise force developers and iPhone users to only use the App Store, then that may completely dispose of Cydia's case, because it would essentially prevent Cydia from proving how the but-for world would have been different absent Apple's anticompetitive activities. As Cydia alleges at length in the FAC, Apple's long-running, comprehensive actions were an integrated whole, and they worked together from 2008 through the present to kill competition and harm both Cydia and its similarly-situated competitors. These legal questions will therefore have immense effects on this case.

*Second*, Cydia has cited cases at the Supreme Court, Court of Appeal, and District Court level that it believes all directly contradict any holdings here that it cannot as a legal matter present evidence of a full anticompetitive scheme and/or that it does not as a legal matter identify new overt acts beyond Apple's 2018 and 2019 technological updates. *See supra*; *see also generally* MTD Opp.; FAC ¶¶ 29, 57, 69. Given that "fair-minded jurists might reach contradictory conclusions" based on this law—and have, *see*, *e.g.*, Section II, *supra*; MTD Opp. at 1-2, 14-15—this issue is ripe for input from the Ninth Circuit, so that it may clarify these important legal issues not only for this case, but for all other antitrust cases within the Circuit moving forward.

*Third*, interlocutory appeal of any denial of this motion may materially advance this case for multiple different reasons. As an initial matter, if Cydia is unable to present the full scope of Apple's alleged anticompetitive scheme and a jury finds for Apple, it is a virtual certainty such a verdict would be reversed if the Ninth Circuit agrees Cydia should have been allowed to present that full evidence. An interlocutory appeal now would provide *both* sides comfort about what they can and cannot present at trial, as well as comfort that any verdict will not be reversed on evidentiary and limitations grounds the Ninth Circuit can clarify now. Next, if the Ninth Circuit agrees Cydia cannot present such evidence, that may greatly affect Cydia's decision making with respect to settlement. Similarly, if Cydia is permitted to introduce evidence of the full scope of Apple's scheme, that permits it to present tying and/or aftermarket monopolization claims this Court found in the *Epic*

SAURIKIT, LLC'S MOTION FOR CLARIFICATION AND/OR FOR LEAVE TO SEEK RECONSIDERATION
Case No. 20-cv-08733-YGR

1   *Games* case could be viable (*i.e.*, a smartphone foremarket, rather than an iOS foremarket, *compare*,

2   *e.g.*, FAC ¶¶ 105; *with Epic Games*, 559 F. Supp. 3d at 955, 1024 n.583). Similarly, if Cydia can

3   present evidence of Apple's exclusive dealing—a claim Epic Games did not pursue—even under

4   the Court's definition of the relevant market, *Epic Games*, 559 F. Supp. 3d at 987, Cydia may prove

5   an actionable antitrust claim. *Id.* at 988-989 (finding Apple had approximately 52.9-57.1% of the

6   mobile gaming transaction market); *see also*, *e.g.*, *Patt v. Antech Diagnostics, Inc.*, 2020 WL

7   5076970, at *6 (C.D. Cal. May 18, 2020) (collecting case law that exclusive dealing must

8   substantially foreclose access to only somewhere between 30-40% of the market); *CollegeNet, Inc.*

9   *v. Common Application, Inc.*, 355 F. Supp. 3d 926, 952 (D. Or. 2018) (same). For these reasons, a

10  Ninth Circuit decision overturning the Court's decision on overt acts and/or the scope of Cydia's

11  permissible trial presentation will greatly affect *Apple's* analysis of its settlement options. This is

12  particularly so given the Ninth Circuit's impending decision in the *Epic Games* appeal, which will

13  provide the parties here substantial guidance on their respective legal theories, trial options, and risk.

14  **IV.    CONCLUSION**

15          Cydia appreciates that there is a strong policy favoring some moment of finality for whether

16  and when a plaintiff can bring a claim. However, in the context of continuing antitrust violations,

17  the Supreme Court and Ninth Circuit are each clear that it is the accused monopolist who bears the

18  risk of losing such finality when they commit act after act harming competition, even if those acts

19  continue for decades. *See*, *e.g.*, *Hanover Shoe*, 392 U.S. at 502 n.15 (43 years of same type of acts

20  still qualified as continuing violation). Here, Cydia brought suit within four years of the

21  technological updates the Court deemed new overt acts, but the scheme it alleges is far more

22  comprehensive than that, involving millions of other acts within the same time period (and before)

23  that it contends are, as a matter of law, overt acts. It therefore believes that the weight of authority

24  permits it to prove up that broad scheme at trial.

25          Cydia thanks the Court for its continued attention to this case, and looks forward to trying it

26  to a jury under the Court's supervision in the near future.

27

28

1   DATED:  June 9, 2022                         QUINN EMANUEL URQUHART &
                                                 SULLIVAN, LLP
2

3

4                                                By   */s/ Adam B. Wolfson*
                                                   _____
5                                                    Stephen A. Swedlow (*pro hac vice*)
                                                     stephenswedlow@quinnemanuel.com
6                                                    David A. Nelson (*pro hac vice* )
                                                     davenelson@quinnemanuel.com
7                                                    Marc L. Kaplan (*pro hac vice*)
                                                     marckaplan@quinnemanuel.com
8                                                    191 N. Wacker Drive, Suite 2700
                                                     Chicago, IL 60606-1881
9                                                    (312) 705-7400

10                                                   Adam B. Wolfson (SBN 262125)
                                                     adamwolfson@quinnemanuel.com
11                                                   Joseph Sarles (SBN 254750)
                                                     josephsarles@quinnemanuel.com
12                                                   865 South Figueroa Street, 10th Floor
                                                     Los Angeles, CA 90017-2543
13                                                   (213) 443-3000

14                                                   *Attorneys for Plaintiff SaurikIT, LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28